**Sherry BEAVER, Plaintiff,**

v.

**EARTHGRAINS BAKING COMPANIES, INC., Defendant.**

**No. C 01–4054–MWB.**

United States District Court, N.D. Iowa, Western Division.

Aug. 19, 2002.

Jay Elliot Denne, Munger, Reinschmidt & Denne, Sioux City, IA, for Plaintiff.

Gene R La Suer, Davis Brown Koehn Shors & Roberts, Des Moines, IA, for Defendant.

MEMORANDUM OPINION AND OR-
DER REGARDING DEFEN-
DANT'S SECOND MOTION FOR
SUMMARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................................................................921
    A. *Procedural Background* ..................................................................................921
    B. *Factual Background* ........................................................................................922

II. *LEGAL ANALYSIS* ............................................................................................925
    A. *Standards For Summary Judgment* ..........................................................925
        1. *Requirements of Rule 56* ...........................................................................925
        2. *The parties' burdens* ..................................................................................926
        3. *Questions of law* .........................................................................................926
    B. *Vesting Of Beaver's Right To Severance Benefits* ................................927
        1. *Requirements for "vesting"* .......................................................................927
        2. *Vesting under the Metz severance plan* .................................................928
        3. *Vesting under an amended or "new" plan* .............................................929
        4. *"Erroneous" statements creating a promise to pay* ............................932

III. *CONCLUSION* ..................................................................................................932

This action, in which the plaintiff now asserts a claim of failure to pay severance benefits in violation of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001 *et seq.*, comes before the court on the defendant's second motion for summary judgment. The court denied without prejudice the defendant's first motion for summary judgment, in which the defendant contended that the plaintiff's state-law breach-of-contract claim was preempted by ERISA. Instead, the court deemed it appropriate to allow the plaintiff to replead her claim, if she could, as an ERISA claim. In response to the plaintiff's amended complaint asserting an ERISA claim, the defendant filed its second motion for summary judgment. In that motion, the defendant contends that the plaintiff had no vested right to severance benefits under the severance plan of the plaintiff's original employer, which the defendant agreed to continue as part of an employee retention agreement when the defendant acquired the plaintiff's original employer. Anticipating the plaintiff's contentions, the defendant also argues that the original employer's severance plan was never amended or replaced with a new plan, created by the defendant, under which the plaintiff's right to severance benefits might have vested. The plaintiff disputes the defendant's contentions that summary judgment is appropriate on her ERISA claim.

## I. INTRODUCTION

### A. Procedural Background

Plaintiff Sherry Beaver filed this action in the Iowa District Court for Woodbury County, Associate Division, on May 7, 2001, alleging that defendant Earthgrains Baking Companies, Inc. (Earthgrains), which had acquired Beaver's employer, Metz Baking Company (Metz), on March 15, 2000, breached an agreement to extend the Metz Baking Company severance package to her as part of a "retention agreement" intended to keep employees through the transition in ownership of

Metz. On May 31, 2001, Earthgrains removed this action to this federal court pursuant to 28 U.S.C. §§ 1441 and 1446, alleging that Beaver's original state-law cause of action for breach of an agreement to pay severance benefits was "completely preempted" by ERISA, thus presenting a claim over which this court would have "federal question" jurisdiction pursuant to 28 U.S.C. § 1331, which in turn permitted removal. The court agreed, and by order dated August 21, 2001, denied Beaver's motion to remand the action to state court.

Beaver did not, however, promptly seek leave to recast her breach-of-contract claim as a claim for violation of ERISA. Therefore, on October 6, 2001, Earthgrains filed a motion for summary judgment alleging that Beaver's sole claim of breach of contract was preempted by ERISA, but that she could not state a cognizable claim under ERISA, because she had no vested right to severance benefits. In response, Beaver sought leave to amend her claim to assert a violation of ERISA. By order dated February 13, 2002, the court denied Earthgrains's first motion for summary judgment without prejudice, concluding that the circumstances justified allowing Beaver the opportunity to amend her complaint to attempt to state a claim under ERISA.

Beaver filed her Amended Complaint on February 26, 2002, alleging, in essence, that her rights pursuant to the severance plan offered by Earthgrains were vested, but that Earthgrains refused to pay severance benefits, in violation of ERISA, when she requested that it do so on May 17, 2000. Earthgrains answered the Amended Complaint on March 6, 2002, denying Beaver's claim. Then, on March 14, 2002, Earthgrains filed its second motion for summary judgment. In that motion, Earthgrains argues (1) that Beaver had no vested right to severance benefits under the Metz severance plan, and (2) that the

Metz severance plan was never amended or replaced by a new plan created by Earthgrains. Beaver resisted Earthgrains's motion for summary judgment on April 3, 2002, arguing principally, as Earthgrains had anticipated, that the Metz severance plan was replaced by a plan created by Earthgrains in communications on March 20 and 23, 2000, regarding its offer of a retention agreement, under which she apparently argues that her right to severance benefits *had* vested. Earthgrains filed a reply in further support of its motion for summary judgment on April 15, 2002.

Unfortunately, the court's schedule did not permit it to hear oral arguments on Earthgrains's second motion for summary judgment until August 13, 2002. However, that motion is now fully submitted and ripe for resolution.

### B. Factual Background

Although disposition of a motion for summary judgment ordinarily turns on the question of whether or not there are genuine issues of material fact, *see* FED. R. CIV. P. 56(c), the court will not attempt here a thorough disquisition of the disputed and undisputed facts in this case. Indeed, the court finds that the undisputed facts, as recognized by the parties in their various submissions, depart little, if at all, from the facts as alleged in Beaver's original and amended complaints, suggesting that the disposition of this matter more likely depends upon application of the law to those facts.

Thus, the essential factual background to the present summary judgment motion consists of the following. Earthgrains acquired Beaver's employer, Metz, on March 15, 2000. On March 20, 2000, Earthgrains provided plaintiff and other employees with a memorandum headed "Retention of Employment." Defendant's Appendix in Support of [Second] Motion for Summary

Judgment, 6. The text of the memorandum, in its entirety, was as follows:

Dear Sherry:

I am pleased to offer to retain you in employment effective as of the closing date of Earthgrains [sic] acquisition of Metz Baking Company. The terms of this offer are:

- **Title and Reporting**—You would retain your current job title and reporting relationship. Your duties will remain essentially the same and will include assisting in the integration of the two companies and special projects

- **Length of Time**—It appears we would need to retain your services for approximately 18 months. You would have to remain in your job until that date in order to receive the retention bonus. If an earlier separation date is mutually agreed upon, you could receive the retention bonus at the earlier, mutually agreed upon date. If an earlier separate date is determined to be appropriate, you will be given at least thirty (30) days notice.

Retention periods that exceed twelve (12) months will be reviewed after the first nine (9) months to determine the need for continuation of the retention period. At that time, the status of your retention period will be reviewed with you.

- **Compensation**—Your current salary will be maintained during your retention period. Merit increases will be considered for 2001 in accordance with Earthgrains' Policies and Practices.

- **Benefits**—You will be covered by Earthgrains benefits by the end of the first calendar quarter of 2001. Your benefits will remain in your current benefits plans until that time. As of the effective date of the closing of the acquisition, you will be eligible to participate in the Earthgrains 401–K Plan.

- **Bonus Amount**—You would be eligible for a bonus of $10,000 for working until September 30, 2001 or a mutually agreed upon date.

- **Work Performance**—In order to receive the bonus, you must faithfully execute the duties to which you are assigned. Failure to satisfactorily perform the job will be treated just as it would in an ongoing employment relationship. Should your performance warrant termination, you will forfeit the bonus. Should you quit without company agreement, you will forfeit the bonus.

- **Severance Payment**—Your severance package will be extended so that its effective date will coincide with the end of your retention period.

- **Career Continuation**—To assist you with continuing your career, out placement services will be available to you through your state Dislocated Worker Unit.

Please review this job/retention offer and reply to me within three (3) business days following your receipt of this offer. I look forward to having you as part of the Metz acquisition transition and integration team.

If you have any questions, or wish to clarify any issues, please call me or Jerry Van Dielen.

Sincerely,

George Moore

Vice President, Human Resource Administration

Defendant's Appendix at 6–7. Also on March 20, 2000, Beaver met with representatives of Earthgrains to discuss the retention agreement.

On March 23, 2000, Beaver and other Metz employees received an e-mail communication from Jeremy DeLaughter, apparently an employee of Earthgrains, concerning retention questions. The e-mail stated the following:

Good morning all,

I wanted to take the opportunity to update everyone on a couple of questions which seem to be unclear this week. The answers to these questions were based on a conversation yesterday afternoon with George Moore, VP of HR/Admin. at EGR.

Q1. If I have received a retention offer, what happens if I choose not to sign?

A1. If you choose not to sign your offer, you will still receive your severance benefits previously discussed under the METZ policy.

Q2. If I accept a retention offer and then during the retention period, decide to resign my position and take a position elsewhere, what happens?

A.2D. If during the course of your retention period you voluntarily resign, you will still receive your severance benefits under the METZ policy. Example: You accept a 12–month retention agreement, after 6 months you leave to go to XYZ company. You will still receive your METZ severance benefits.

Q3. If I have been offered a retention bonus, what happens if I leave before the retention period ends?

A3. If you voluntarily resign before the retention bonus period ends, you WILL forfeit the retention bonus.

I know this does not answer all of the individual questions currently out there, however, as these types of general group questions arise, I will try to obtain answers accordingly.

If you still have specific individual questions, I urge you to address those questions with the person(s) who are discussing potential offers with you.

Defendant's Appendix at 8. Beaver contends that, relying on Earthgrains's representations, she accepted the terms of her retention agreement on March 23, 2000. Earthgrains does not dispute that Beaver accepted the offer, only what Beaver might have relied upon in doing so, a matter as to which Earthgrains pleads ignorance.

Beaver contends that, on March 29, 2000, in a meeting and a letter distributed to employees, Earthgrains "rescinded" its agreement to extend severance benefits. However, Earthgrains contends that, in both the March 29, 2000, meeting and letter, it "corrected a misinterpretation" of the Metz severance plan. The letter of March 29, 2000, states the following:

TO: Metz Employees who received retention of employment offers from Earthgrains

This is to correct a misinterpretation that was made when we issued the offer of a retention bonus for you to continue your current employment until released by the Company.

At that time you were told you would receive severance pay under the Metz Baking Company severance pay plan, even if you did not accept our retention offer. This was incorrect. It was based upon a misinterpretation of that policy. Upon reviewing the policy, and discussing it with Metz executives, eligibility would occur only if you were released by the company or you were offered a job more than 50 miles from your current location. The retention offer letter itself says that your severance package will be extended so that its effective date will coincide with the end of your retention period. Your entitlement to that pay depends upon the Metz Severance Pay Policy, a copy of which is attached. Since we are not asking you to relocate and have not released you, you will not be eligible to collect severance pay while

declining a retention offer. In order to receive severance pay and the retention bonus, you must remain in the employ of the company until such time as you are released.

We apologize for any inconvenience that you may have experienced as a result of the prior miscommunication. If you have a specific problem arising from this miscommunication, please call Brenda Wiegers or me at 800–449–4284.

Sincerely,

Edward J. Wizeman

VP, Human Resources

Defendant's Appendix at 9.

Earthgrains admits Beaver's factual statement that "[o]n March 31, 2000, [Earthgrains] honored its original retention offer regarding severance eligibility to two employees who had originally accepted the retention offer within the required three days (as did Plaintiff), but later resigned." *Compare* Plaintiff's Statement of Additional Facts in Support of Plaintiff's Resistance to Defendant's Second Motion for Summary Judgment, ¶ 11, *with* Defendant's Response to Plaintiff's Statement of Additional Facts, ¶ 11. However, it is not clear whether "honoring" the retention offer meant that Earthgrains paid severance benefits to the individuals who resigned shortly after accepting the retention offer. Notwithstanding that ambiguity, the crux of the parties' dispute appears to be Beaver's contention that Earthgrains subsequently refused to "honor" the retention agreement on May 17, 2000, when she asked Earthgrains to do so upon her resignation and Earthgrains's contrary contention that it agreed, at all times, to live by the Metz Severance Pay Policy and the Retention Letter. *Compare* Plaintiff's Statement of Additional Facts, ¶¶ 12–13, *with* Defendant's Response to Plaintiff's Statement of Additional Facts, ¶¶ 12–13. In any event, there appears to be no dispute that Earthgrains did not pay Beaver any severance benefits when she resigned in May 2000.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill*, 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.*, 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part*, 202 F.3d 1035 (8th Cir.), *cert. denied*, 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.*, 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd*, 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.*, 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.*, 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with*

*the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED. R. CIV. P. 56(a)-(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston,* 133 F.3d at 1107; *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at

586, 106 S.Ct. 1348. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348; *Quick,* 90 F.3d at 1377 (same).

### 3. Questions of law

Where "[a] case involves only questions of law, it ·is particularly appropriate for summary judgment." *See, e.g., Team-Bank, N.A. v. McClure,* 279 F.3d 614, 617 (8th Cir.2002). Moreover, as to specific questions presented here, ordinarily "[t]he existence of an ERISA plan is a mixed question of fact and law." *Kulinski v. Medtronic Bio–Medicus, Inc.,* 21 F.3d 254, 256 (8th Cir.1994) (holding, further, that the question is subject to *de novo* review on appeal). However, "[w]hen the factual circumstances are undisputed, ... whether the facts suffice to demonstrate the exis-

tence of a plan as defined by ERISA is a question of law." *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Similarly, where there are no disputed facts pertinent to the issue, whether or not benefits under an ERISA welfare plan have vested can be decided as a question of law. *Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1345 (8th Cir.1997).

### B. Vesting Of Beaver's Right To Severance Benefits

#### 1. Requirements for "vesting"

Under ERISA, "[a] 'plan' is defined as 'an employee welfare benefit plan or an employee pension benefit plan or a plan which is both.'" *Emmenegger v. Bull Moose Tube Co.*, 197 F.3d 929, 931 (8th Cir.1999) (quoting 29 U.S.C. § 1002(3)); *accord Hughes v. 3M Retiree Med. Plan*, 281 F.3d 786, 789 (8th Cir.2002) (stating, "ERISA categorizes employment benefits as either welfare benefits or pension benefits," but citing § 1002(1)-(2)). An "employee welfare benefit plan" is "any plan, fund, or program ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants," *inter alia*, severance benefits. *Id.* at 934 (quoting 29 U.S.C. § 1002(1)(B) (1994)); *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7 n. 5, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (explaining how severance benefits come within the definition of an employee welfare benefit plan). Although "not every policy that provides for the payment of severance benefits is necessarily an ERISA plan," *see id.*, this court concluded in ruling on Beaver's motion to remand that the Metz severance plan—the only "plan" then at issue—was, indeed, an ERISA welfare benefits plan.

As the Eighth Circuit Court of Appeals very recently explained,

> ERISA mandates vested pension benefits. *See* 29 U.S.C. § 1053. But Congress did not mandate vesting for em-

ployee welfare benefit plans, such as health care plans. *See* 29 U.S.C. § 1051(1); *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). "Therefore, an employer may unilaterally modify or terminate medical benefits at any time absent the employer's contractual agreement to the contrary." *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 949 (8th Cir.1994) (quotation omitted), *cert. denied*, 514 U.S. 1050, 115 S.Ct. 1428, 131 L.Ed.2d 310 (1995). Plaintiffs have the burden of proof on the vesting issue. *See Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1345 (8th Cir.1997).

*Stearns v. NCR Corp.*, 297 F.3d 706, 711–12 (8th Cir.2002); *Hughes*, 281 F.3d at 789–90. It follows from *Stearns* and *Hughes* that an employer may also unilaterally modify or terminate *severance* benefits at any time, where severance benefits are offered pursuant to an ERISA welfare plan, at least in the absence of a contractual agreement to the contrary, and that the plaintiff bears the burden of proving the vesting of severance benefits. *Cf. id.*

Also, in *Stearns*, the Eighth Circuit Court of Appeals explained that, " 'a reservation-of-rights provision is inconsistent with, and in most cases would defeat, a claim of vested benefits.' " *Id.* at 711–12 (quoting *Jensen*, 38 F.3d at 950); *accord Hutchins*, 110 F.3d at 1345–46 (concluding that benefits under an ERISA welfare benefit plan did not vest in the face of plain language in the plan permitting the employer to modify or terminate it). Indeed, our appellate court has "repeatedly held that an unambiguous reservation-of-rights provision is sufficient without more to defeat a claim that retirement welfare plan benefits are vested." *Id.* (citing cases so holding). The exception to the preclusive effect of a reservation-of-rights provision on the vesting of benefits under an ERISA welfare benefit plan might arise if

the provision "is facially ambiguous, or if it conflicts with other plan provisions," but "there must be an affirmative indication of vesting in the plan documents to overcome an unambiguous reservation of rights." *Id.* Furthermore, although other provisions of a welfare benefit plan must be disclosed in the ERISA-mandated summary plan description, the "summary plan description need not disclose that the welfare plan benefits are not vested." *Id.*

More generally, a welfare benefit may vest if there is a promise to provide vested benefits. *Hughes,* 281 F.3d at 790; *Jensen,* 38 F.3d at 949. Moreover, "Because employee benefit plans must be established by a 'written instrument,' 29 U.S.C. § 1102(a)(1), any [employer's] promise to provide vested benefits must be 'incorporated, in some fashion, into the formal written ERISA plan.'" *Jensen,* 38 F.3d at 949 (quoting *United Paperworkers Int'l Union v. Jefferson Smurfit Corp.,* 961 F.2d 1384, 1386 (8th Cir.1992)).

### 2. *Vesting under the Metz severance plan*

■ Prior to amending her complaint, Beaver asserted that the Metz severance plan was the contract under which she had a right to severance pay. More specifically, the Metz severance plan is the "Separation Agreements" portion of the Metz "Policy Statement." *See* Defendant's Appendix at 10–15. The Metz severance plan concludes with precisely the sort of reservation-of-rights provision permitting Metz (or its successor) to modify or terminate benefits under the plan at any time:

> The Company reserves the right to modify, revoke, suspend, terminate, or change this policy in whole or in part at any time with or without notice.

*Id.* at 15. Such a sweeping reservation of rights " 'is inconsistent with, and in most cases would defeat, a claim of vested benefits.' " *Stearns,* 297 F.3d at 706, 711–12

(quoting *Jensen,* 38 F.3d at 950). Moreover, Beaver has failed to generate any genuine issue of material fact suggesting, or even to argue, that, as a matter of law, this provision is either ambiguous or conflicts with other plan provisions, such that this court need not look at extrinsic evidence to determine whether the parties intended to confer vested benefits. *Id.* Beaver's severance benefits under the Metz severance plan simply were not vested as a matter of law.

Furthermore, the discretionary nature of the award of severance benefits under the Metz severance plan makes any assertion that the rights under that plan were "vested" untenable as a matter of law. The severance plan also provides, in pertinent part, as follows:

> When *case-by-case circumstances dictate,* a separation agreement *may be authorized* between the Company and a terminating employee....

> Any decision to offer a separation agreement by a manager, a supervisor, or the plant HR Department must be made with the concurrence of the General Manager, the related GAO department head, the MBC President and/or CEO. In all instances, following the necessary approvals, the separation letter will be properly drafted by GAO Human Resources following the calculation of all applicable payments to the separating employee; e.g., severance, accrued vacation; MetzFlex cash options....

Defendant's Appendix at 10–11 (emphasis added). Thus, the plain language of the Metz severance policy establishes the case-by-case nature of the determination of whether or not a particular employee will be offered a separation agreement and several company officers and/or managers must concur in the decision to grant that employee such a separation agreement. *Id.* Only the provisions of the plan estab-

lishing "eligibility" for severance benefits could even remotely be described as "mechanical" or non-discretionary, *see* Defendant's Appendix at 11 ("eligibility" requirements (1) and (2)), but there is no necessary *promise to pay* such benefits, even if the employee is "eligible" for them, anywhere in the plan. *See Hughes,* 281 F.3d at 790 (determining "vesting" by looking for a promise to pay vested benefits); *Jensen,* 38 F.3d at 949 (same). These provisions confirm that Beaver's severance benefits under the Metz severance plan were not vested as a matter of law.

### 3. *Vesting under an amended or "new" plan*

■ For the first time in resistance to Earthgrains's second motion for summary judgment, Beaver makes plain that her claim for vested severance benefits was not based exclusively on the Metz severance plan, but was instead based on a purported "amendment" to the Metz severance plan or the creation of an entirely "new" severance plan by communications from Earthgrains. The communications that Beaver contends demonstrate the "amendment" of the Metz plan or "creation" of a "new" plan consist of the March 20, 2000, retention offer and the March 23, 2000, meeting and e-mail concerning questions of entitlement to severance benefits under certain scenarios. Principally on the authority of *Deboard v. Sunshine Mining & Refining Co.,* 208 F.3d 1228 (10th Cir.2000), she argues that these communications created a "new" severance plan, which referred to the Metz severance plan for the calculation of benefits, but did not expressly incorporate its reservation-of-rights or other provisions.

Whatever persuasive authority the *Deboard* decision may have had, however, has been eclipsed by the more recent decision of the Eighth Circuit Court of Appeals in *Stearns v. NCR Corp.,* 297 F.3d 706, 711–

12 (8th Cir.2002), already cited above as controlling authority on the question of "vesting" under the Metz severance plan. The court finds that *Stearns* is also controlling on the issue of creation of an amended or new plan, and vesting under such a plan, and, hence, dispositive of Earthgrains's second motion for summary judgment.

In *Stearns,* defendant NCR Corporation offered an "Enhanced Retirement Program" in 1993 to salaried employees meeting certain age and service requirements. *Stearns,* 297 F.3d at 708. When that program was offered, "existing health care benefits for NCR's salaried employees and retirees were defined in a comprehensive document entitled Group Benefits Plan For Salaried Employees Effective January 1, 1993," which "was an 'employee welfare benefit plan' for purposes of ERISA." *Id.* That Group Benefits Plan included a reservation-of-rights provision, reserving NCR's right to change or cancel the plan or any benefits under it at any time. *Id.* After announcing its Enhanced Retirement Program, NCR distributed a "Questions and Answers Guide" "'to provide [eligible employees] with information to assist them as they make decisions relative to the Enhanced Retirement Program.'" *Id.* at 709 (quoting the Guide). The Guide referred prospective participants in the Enhanced Retirement Program to the Group Benefits Plan booklet for details of the NCR health care plans under the Program, but also explained that the retirement health care benefits would be subject to modification at seminars and broadcasts conducted to explain the Program to prospective participants. *Id.* To participate in the Program, eligible employees were required to sign releases of claims in return for enhanced benefits. *Id.* At first, after Program participants retired, NCR made only modest changes to the health care benefits under the Program. However, a dispute

arose when NCR notified participants of "significant adverse changes" in their retirement health care benefits effective January 1, 1999. *Id.*

In the portion of the *Stearns* decision of interest here, the court considered "whether the Program's retirement health care benefits were vested when plaintiffs agreed to participate in the Program." *Id.* at 710. In that case, as here, the "critical threshold issue" for determining vesting of welfare plan benefits was "to define the contours of the ERISA plan [the court is] construing." *Id.* at 711–12. The parties' arguments in that case also echo, in important respects, the arguments asserted here:

> NCR argues that the Program's retirement health care benefits were provided as an amendment to NCR's existing Group Benefits Plan, which contained the Reservation of Rights provision. Plaintiffs argue that the Program constituted an independent ERISA plan, separate from the broader Group Benefits Plan and its Reservation of Rights provision, and therefore the relevant plan contains no express reservation of NCR's right to modify or terminate the plan's retirement health care benefits.

*Stearns*, 297 F.3d at 711–12. Similarly, here, Earthgrains also argues that the March 20, 2000, "retention offer" merely incorporated the Metz severance plan, amending it merely to extend it to the conclusion of the retention period,[1] while Beaver argues that the retention offer and subsequent explanatory e-mail on March 23, 2000, actually constituted a "new" or "independent" plan, which did not contain any express reservation of Earthgrains's right to modify or terminate the severance benefits, or otherwise incorporate any of the Metz plan's limitations on eligibility for or award of severance benefits.

In *Stearns,*

> The district court rejected plaintiffs' contention, concluding that "[t]he documentary evidence offered by the parties in this case makes clear that the ... Program is not, as plaintiffs contend, a free-standing ERISA plan. Rather, NCR amended the basic health care plan that it provided for its employees at the time of the ... Program's inception."

*Stearns*, 297 F.3d at 711–12. The appellate court agreed:

> The documents NCR distributed in offering the Program were not sufficient to explain the retirement health care benefits being offered without reference to the detailed benefit provisions in the existing Group Benefits Plan. Indeed, NCR's Question and Answer Guide—a document plaintiffs cite as strong evidence the Program was a free-standing ERISA plan—advised employees to "refer to our Group Benefits Plan booklet ... for the details of the NCR Health Care Plans." In addition, the documents by which NCR formally adopted the Program confirm that it was an amendment to existing employee benefit plans.

*Id.*

In light of *Stearns*, it is clear that in Beaver's case, Earthgrains's retention offer of March 20, 2000, did not establish a "free-standing ERISA [severance] plan." Rather, the retention offer itself was not sufficient to explain the severance benefits being offered without reference to the detailed benefit provisions of the existing Metz severance plan. *Id.* Indeed, the only

---

1. Indeed, Earthgrains denies that the Metz severance plan was "amended" at all, just "continued" through the change in ownership until it would be replaced with Earthgrains's own plans.

reference to severance benefits in the March 20, 2000, retention offer states that "Your severance package will be extended so that its effective date will coincide with the end of your retention period." Defendant's Appendix at 7. The only possible severance package that could have been identified as "your severance package" at the time was the existing Metz severance plan. Moreover, even the March 23, 2000, e-mail, upon which Beaver places such reliance, specifically referred to the Metz severance plan as "the" severance plan at issue and purported to construe the terms of *that* severance plan. *See* Defendant's Appendix at 8, *and compare Stearns,* 297 F.3d at 711–12 ("Indeed, NCR's Question and Answer Guide—a document plaintiffs cite as strong evidence the Program was a free-standing ERISA plan—advised employees to 'refer to our Group Benefits Plan booklet ... for the details of the NCR Health Care Plans.' "). Beaver has not demonstrated that there is any evidence of any other formally adopted, separate severance plan. *Cf. id.* Thus, as in *Stearns,* this court concludes that, as a matter of law, the retention offer did no more than incorporate the existing Metz severance plan into the Earthgrains "retention offer," amending that severance plan only to extend it to the end of the retention period. *See* Defendant's Appendix at 7 ("Your severance package will be extended so that its effective date will coincide with the end of your retention period."). To the extent that the Tenth Circuit Court of Appeals held in *Deboard*

*v. Sunshine Mining & Refining Co.,* 208 F.3d 1228 (10th Cir.2000), that a "new" ERISA plan is created by a letter incorporating various benefits plans by reference, and adding certain terms or benefits not allowed in those other plans, it is contrary to *Stearns* and of no force in this circuit.

Also as in *Stearns,* this conclusion "means that the relevant plan documents included the express Reservation of Rights provision" in the Metz severance plan. *See id.* (concluding that the Program plan documents included the reservation of rights in the original NCR health care benefit plan). As explained in *Stearns,* "[t]hat is very significant," because the reservation-of-rights provision defeats Beaver's claim that severance benefits under the retention offer were "vested." *See id.* As in *Stearns,* this court found above that there was nothing facially ambiguous in the reservation-of-rights provision in the Metz severance plan, nor does the provision in any way conflict with other plan provisions. *See id.* An intent to vest may not be implied from the fact that the March 20, 2000, retention offer and March 23, 2000, e-mail explaining the severance benefits under the retention offer did not address the vesting issue or cross-reference the reservation-of-rights provision, because "not even the ERISA-mandated summary plan description need disclose that welfare plan benefits are not vested." *See id.* (so holding with regard to releases and other documents explaining the enhanced retirement program).[2] Thus, as in *Stearns,* "under ... well-established prin-

---

**2.** In *Deboard,* upon which Beaver relies, the court rejected the employer's contention that the "new" welfare benefit plan incorporated the reservation-of-rights clause of the constituent plans, because "the clause is ambiguous and does not provide [the defendant] with the right to revoke its promise to pay plaintiffs' health insurance premiums." *Deboard,* 208 F.3d at 1239. However, in this case, as explained above, there is no ambiguity to be found in the reservation-of-rights provision of the Metz severance plan and that provision unequivocally provides Metz (or Earthgrains, as its successor) with the right to revoke *any* portion of the severance plan. *See* Defendant's Appendix at 15. Furthermore, the plan itself contains no promise to pay severance benefits that would require revocation. *See* Defendant's Appendix at 10–15

ciples of ERISA plan interpretation," summary judgment must be granted in favor of Earthgrains dismissing Beaver's claim for "vested" severance benefits. *Id.*

### 4. *"Erroneous" statements creating a promise to pay*

■ Finally, in the interest of completeness, the court will address separately, and only briefly, Beaver's contentions that the statement in the March 23, 2000, e-mail regarding availability of severance benefits to employees who resigned before the end of their retention period, either alone or in conjunction with the March 20, 2000, retention offer, created a promise to pay severance benefits, thus vesting her right in such benefits. First, it appears that Beaver has premised this argument, in part, on her reading of *Deboard v. Sunshine Mining & Refining Co.,* 208 F.3d 1228 (10th Cir.2000), as concluding that a "new" ERISA plan was created by multiple documents. However, this is not the conclusion reached in *Deboard.* Although the Tenth Circuit Court of Appeals concluded that "the October 3, 1985, letters" created a "new" plan, because they "satisfied the minimum requirements for establishing an ERISA plan," this conclusion was not based on the composite of several letters addressing various topics, but multiple copies of a *single* letter to all employees eligible for the proposed early retirement subsidy. *See Deboard,* 208 F.3d at 1232–33. In *Deboard,* the court analyzed whether a single document, the October 5, 1985, letter, created a "new" ERISA benefit plan. *Id.* at 1237–41.

More important than the question of whether or not Beaver has misread *Deboard,* however, is the court's conclusion that the March 23, 2000, e-mail cannot create a vested right to severance benefits,

in any event, because it would be an impermissible, informal amendment to the written documents of the Metz severance plan. It is well-settled that

> [i]nformal statements by an employer's representatives about benefits do not legally alter an ERISA plan, which is required by statute to be written. *Jensen,* 38 F.3d at 949. "ERISA precludes oral or informal amendments to a plan, by estoppel or otherwise." *Palmisano v. Allina Health Systems, Inc.,* 190 F.3d 881, 885 (8th Cir.1999) (quoting *Houghton v. SIPCO,* 38 F.3d 953, 958 (8th Cir.1994)).

*Barker v. Ceridian Corp.,* 193 F.3d 976, 982 (8th Cir.1999), *cert. denied,* 529 U.S. 1109, 120 S.Ct. 1963, 146 L.Ed.2d 794 (2000). In this case, there is nothing ambiguous about the language establishing the lack of vesting of severance benefits under the Metz severance plan, as incorporated into the retention offer, upon which Beaver could seize to try to make the March 23, 2000, e-mail a "contemporaneous interpretation of the instrument by the employer" that would be "relevant evidence as to the settlor's intent." *Compare id.*[3] Thus, the March 23, 2000, e-mail, even if it misinterpreted severance benefits under the Metz plan, changes nothing about those benefits or the way in which those benefits could or could not "vest."

### III. CONCLUSION

As a matter of law, the severance benefits that Beaver claims simply had not vested, as a matter of law, which defeats her entire action. Therefore, Earthgrains's second motion for summary judgment must be, and hereby is, **granted,**

---

3. Moreover, nowhere has Beaver accounted for the fact that Earthgrains corrected the erroneous interpretation of the Metz severance plan in its March 23, 2000, e-mail in the meeting and correspondence of March 29, 2000.

and Beaver's action is **dismissed in its entirety.**

**IT IS SO ORDERED.**