# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1970

_____

|  |  |  |
|---|---|---|
| Edward N. Hughes and<br>Dorothy K. Hughes, | * <br> * <br> * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| vs. | * | District Court for the |
| | * | District of Minnesota. |
| 3M Retiree Medical Plan and | * | |
| Minnesota Mining and | * | |
| Manufacturing Company ("3M"), | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: December 12, 2001
Filed:      February 28, 2002

_____

Before WOLLMAN[1] and MURPHY, Circuit Judges, and BATTEY,[2] District
Judge.

_____

BATTEY, District Judge.

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United
States Court of Appeals for the Eighth Circuit at the close of business on January 31,
2002.  He has been succeeded by the Honorable David R. Hansen.

[2]The Honorable Richard H. Battey, United States District Judge for the District
of South Dakota, sitting by designation.

Plaintiffs, retired employees of 3M, appeal the district court's[3] grant of summary judgment in favor of defendants that allowed 3M to increase premiums for retired employees' medical benefits. The Hughes bring their claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3). They argue that the district court's grant of summary judgment was erroneous because 3M provided vested benefits. Even though 3M reserved the right to change the level of disability benefits that retired employees would receive in the future, the Hughes argue that the vesting language survives such a clause. They further argue that the extrinsic evidence they submitted created a genuine issue of material fact concerning 3M's right to change retirement benefits. Because the summary plan description does not contain vesting language and unambiguously reserves to 3M the right to change the retirement benefits, we affirm the district court's judgment.

## FACTS

Appellants Edward N. Hughes and Dorothy K. Hughes were employed by 3M until they both retired at age 66 - Ed retiring in 1991 and Dorothy in 1993. The Hughes, until their retirement, were members of Local 6-75 of Oil, Chemical, Atomic Workers Union ("OCAW"). Every third year from 1982 to 1997, OCAW and 3M negotiated the terms of a new collective bargaining agreement, and the resulting agreement was distributed to the active employees. A document called "Your Benefit Program" ("Your Benefits booklet") was attached and was referenced by the collective bargaining agreement. The 1991 to 1994 collective bargaining agreement was in effect at the time the Hughes retired. Post-retirement medical benefits for already retired employees were never negotiated by the parties.

---

[3]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Prior to 1998, 3M provided retiree medical benefits in one of two ways, depending upon the retiree's age. If a retiree was age 65 or older and thus was eligible for Medicare, 3M issued benefits under its Medicare Supplement Plan ("Med-Supp Plan"). If a retiree retired before age 65, the retiree received the same medical benefits as an active employee. Once the retiree turned 65 years of age, however, he or she was switched to the Med-Supp Plan. The retiree was provided with a Med-Supp Plan booklet after retirement.

Edward and Dorothy Hughes both retired at age 65, thus receiving medical benefits under the Med-Supp Plan. In 1998, 3M implemented a revised retiree medical plan, which resulted in additional cost-sharing by retirees.

The Med-Supp Plan in effect at the Hughes' retirement included a reservation of rights clause, which stated "[t]he Company fully intends to continue this Plan indefinitely, but reserves the right to change or discontinue it if necessary." It also states that coverage will stop "if 3M discontinues the Plan." 3M contends that the Med-Supp Plan booklet governs the dispute as the relevant summary plan description whose dissemination is mandated by ERISA. The Hughes point to no vesting language in the Med-Supp Plan.

In contrast, the Hughes contend that the 1991 Your Benefits booklet is the relevant summary plan description under ERISA. This booklet was issued to every active employee and contains a half-page section which states the following:

Post-Retirement Medical Benefits
    If you retire with 15 years of pension service regardless of when you were hired, you and your spouse will receive medical benefits for your lifetime at company expense.

The section also included a statement that "[b]ooklets describing post-retirement medical benefits will be given to you when you retire." The Your Benefits

booklet also contained a reservation of rights clause, stating "[t]he company hopes and expects to continue these plans indefinitely, but reserves the right to amend or discontinue them, subject to collective bargaining as required."

**DISCUSSION**

We review de novo a grant of summary judgment. Barker v. Ceridian Corp., 122 F.3d 628, 632 (8th Cir. 1997). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences of fact from the record are construed in the light most favorable to the party opposing summary judgment. See Schrader v. Royal Caribbean Cruise Line, Inc., 952 F.2d 1008, 1013 (8th Cir. 1991). In the de novo review of an ERISA plan, we interpret the terms of the plan by "giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." Chiles v. Ceridian Corp., 95 F.3d 1505, 1511 (10th Cir. 1996).

ERISA requires that employee benefit plans be established by a written instrument. See 29 U.S.C. § 1102(a)(1). Summary plan descriptions are considered part of the ERISA plan document. See Jensen v. SIPCO, Inc., 38 F.3d 945, 949 (8th Cir. 1994). An important objective of ERISA was to mandate disclosure to employees. See Id. at 952. This being so, when conflict is apparent between provisions of a formal plan and provisions of a summary plan, the summary plan description prevails. Id.

ERISA categorizes employment benefits as either welfare benefits or pension benefits. See 29 U.S.C. § 1002(1)-(2). The parties agree that the plan in dispute in this case is a welfare benefit plan. While pension plans are subject to mandatory vesting requirements, welfare plans are not. See 29 U.S.C. § 1053; Curtiss-Wright

-4-

Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995). An employer offering welfare benefits may unilaterally modify or terminate benefits at the employer's discretion, so long as the employer has not contracted an agreement to the contrary. Howe v. Varity Corp., 896 F.2d 1107, 1109 (8th Cir. 1990). A welfare benefit may vest if a promise to provide vested benefits is "incorporated, in some fashion, into the formal written ERISA plan." Jensen, 38 F.3d at 949. Plaintiffs have the burden of proof as to whether vesting language exists in order to confer a vested right to employee welfare benefits. Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512, 1516-17 (8th Cir. 1998), cert. denied, 489 U.S. 1051 (1989).

Accordingly, our inquiry begins with the written plan documents. We look to the law of trusts when interpreting ERISA plan documents. Jensen, 38 F.3d at 950. "The terms of trusts created by written instruments are 'determined by the provisions of the instrument as interpreted in light of all the circumstances and such other evidence of the intention of the settlor with respect to the trust as is not inadmissable.'" Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 112 (1989), quoting Restatement (Second) of Trust § 4 cmt. d (1959). Other evidence is admissible if the language of the plan provision at issue is ambiguous.

> That intent [of the settlor] is first sought by careful examination of the trust clause in question, giving the words in that clause their ordinary meanings. If the construction question cannot be resolved by reference to the clause alone, the court will examine the entire trust instrument to determine the creator's intent and purposes . . . . The third step becomes necessary when the intent or meaning of the settlor . . . cannot be determined by reference to the provisions of the trust instrument itself. Extrinsic evidence will be admitted by the court to assist it in determining the meaning and effect of the particular clause.

George G. Bogart, The Law of Trusts & Trustees, § 182 (rev. 2d ed. 1979 & Supp. 1993) (footnotes omitted). See also Jensen, 38 F.3d at 950.

The Hughes' position is that the Your Benefits booklet is the relevant summary plan description. This booklet was disseminated with the 1991 collective bargaining agreement to all active employees. While it served as the relevant summary plan description as to medical benefits for active employees and retirees under the age of 65, it clearly referenced the reader to another booklet to gain information about retirement benefits for those 65 or over.

Under ERISA, a summary plan description "shall be sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan." 29 C.F.R. § 2520.102-2(a). The contents of a summary plan description must "describe the plan's provisions relating to eligibility to participate in the plan" and a "description or summary of the benefits." 20 C.F.R. § 2520.102-2(j) and (j)(2). Further, for employee welfare benefit plans that are group health plans, a summary plan description must include a description of the following:

> any cost-sharing provisions, including premiums, deductibles, coinsurance, and copayment amounts for which the participant or beneficiary will be responsible; any annual or lifetime caps or other limits on benefits under the plan; the extent to which preventive services are covered under the plan; whether, and under what circumstances, existing and new drugs are covered under the plan; whether, and under what circumstances, coverage is provided for medical tests, devices and procedures; provisions governing the use of network providers, the composition of the provider network, and whether, and under what circumstances, coverage is provided for out-of-network services; any conditions or limits on the selection of primary care providers or providers of specialty medical care; any conditions or limits applicable to obtaining emergency medical care; and any provisions requiring preauthorizations or utilization review as a condition to obtaining a benefit or service under the plan.

29 C.F.R. § 2520.102-3(j)(3). ERISA further requires summary plan descriptions to include "a statement clearly identifying circumstances which may result in

-6-

disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits. . . ." 29 C.F.R. § 2520.102-3(k)(l).

The 73-page Your Benefits booklet addressed retiree benefits with a short half-page description stating in full the following:

> Post-Retirement Medical Benefits
> If you retire with 15 years of pension service regardless of when you were hired, you and your spouse will receive medical benefits for your lifetime at company expense.
>
> If you retire with less than 15 years of 3M pension service, you and your spouse will receive medical benefits at company expense for a time equal to the lesser of your 3M pension service, or your lifetime. After that time, you or your spouse may continue benefits for life by paying the required rate.
>
> *If you retire before age 65,* you and your spouse will be covered by the 3M Medical Plan for active employees at your location. Your eligible children will be covered by this 3M Medical Plan as long as either you or your spouse has coverage under that plan. When you and your spouse reach age 65, each of you will be covered by the Medicare Supplement plan, which provides up to $10,000 in lifetime benefits.
>
> Booklets describing your post-retirement medical benefits will be given to you when you retire.
>
> *If you die after retirement from 3M while the company is paying for medical benefits*, your eligible survivors will have benefits continued for up to one year at 3M's expense. After that time, they may continue the benefits by paying the required rate.

*If you die after retirement from 3M while you are paying for medical benefits*, your eligible survivors will be able to continue their coverage by paying the required rate.

This small section of the Your Benefits booklet does not comport with the requirements of summary plan description content as found in 29 C.F.R. § 2520.102-3(j) and (k). Furthermore, 3M did not intend for the Your Benefit booklet to be a summary plan description of retiree benefits for those over 65 years of age. The Med-Supp booklet states in its introduction that "[t]he information in this booklet is called a summary plan description. It describes the 3M Medicare Supplement Plan that is effective on January 1, 1991, and includes all amendments or changes made to the plan up to that date. This booklet is the official plan document for the 3M Medicare Supplement Plan." The Med-Supp booklet goes on to describe plan eligibility, what benefits are paid, what is covered under the plan, how coverage is limited, what is not covered, and how benefits are paid.

We therefore hold that the Med-Supp booklet is the summary plan description in this case. The Med-Supp booklet is "sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan." See 29 C.F.R. § 2520.102-2(a). The Med-Supp booklet meets the content requirements of ERISA. In addition, the Med-Supp booklet comports with ERISA's obligation-to-furnish provision, in that 3M disseminated the booklet to the Hughes within 90 days of their retirement. See 29 C.F.R. § 2520.104b-2(a)(1). While the Med-Supp booklet is in full compliance with ERISA, the Your Benefit booklet falls far short.

The Hughes have pointed to no vesting language in the Med-Supp booklet, and the Court's own perusal has found none. Under 29 U.S.C. § 1022(b), a welfare plan summary plan description is not required to disclose that plan benefits are not vested. See Jensen, 38 F.3d at 952. A welfare plan summary plan description is only required to specify those circumstances in which a plan beneficiary is not entitled to benefits

otherwise provided by the terms of the plan. 29 U.S.C. § 1022(b), See Jensen, 38 F.3d at 952; Wise v. El Paso Natural Gas Co., 986 F.2d 929, 935 (5th Cir. 1993) ("Section 1022(b) relates to an individual employee's eligibility under then existing, current terms of the Plan and not to the possibility that those terms might later be changed, as ERISA undeniably permits.") cert. denied, 510 U.S. 870 (1993). In addition, the Department of Labor, which enforces and interprets ERISA, has not promulgated regulations requiring that a welfare plan summary plan description specifically disclose that participant benefits are not vested. See 29 C.F.R. §§ 2520.102-1 to -4, .104b-1 to -4.

The Med-Supp booklet's reservation of rights clause does not, in and of itself, suggest an intent to vest retiree benefits. At the very end of the booklet, under "Future of the Plan," it states that "[t]he Company fully intends to continue this Plan indefinitely, but reserves the right to change or discontinue it if necessary. Such action would be taken only after the most careful consideration." It is plain and unambiguous that the word "intends" does not indicate finality. To hold otherwise would render the words "reserves the right to change or discontinue it if necessary" meaningless. The Med-Supp booklet, devoid of vesting language, explicitly reserves the right to modify the retiree medical benefit plan at any time. The plaintiffs have not met the burden of proving vesting language, thus we affirm the trial court's summary judgment in favor of 3M.

The trial court considered extrinsic evidence in its summary judgment decision. Since this Court finds the ERISA document language unambiguous, we examine no extrinsic evidence. We hold that vesting language arguably exists in the Your Benefits booklet, but the Your Benefits booklet is not the relevant summary plan description for retirees 65 years of age or older. We hold that the appropriate

summary plan description is the Med-Supp booklet, which exists without vesting language and with a reservation of rights provision.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.