# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2213

_____

Brandee K. Adams, Individually;          *
Jordan Adams, by and through her         *
Natural Mother, Legal Guardian and       *
Next Friend, Brandee K. Adams,           *
                                         *
          Appellants,                    *   Appeal from the United States
                                         *   District Court for the
     v.                                  *   Western District of Missouri.
                                         *
Continental Casualty Company,            *
                                         *
          Appellee.                      *

_____

Submitted: November 20, 2003

Filed: April 20, 2004

_____

Before BYE, RICHARD S. ARNOLD, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Brandee K. Adams and Jordan Adams appeal the district court's[1] summary judgment for Continental Casualty Company ("Continental") in the Adamses's claim

_____

[1] The Honorable H. Dean Whipple, Chief Judge, United States District Court for the Western District of Missouri.

for accidental-death benefits recoverable under an Employment Retirement Income Security Act ("ERISA") plan administered by Continental. We affirm.

## I. *Background*

On April 29, 2000, Michael Adams[2] died while sports parachuting (skydiving). The death certificate indicated that Michael died as a result of suffocation due to a crushing injury to his larynx and trachea caused by a high-speed parachute landing on a hard-dirt surface. Michael also sustained a fracture to his left femur at the knee. The medics who found Michael performed cardiopulmonary resuscitation while transporting him to the hospital. Michael was pronounced dead upon arrival. The coroner's report indicated that the probable cause of Michael's death was suffocation and cardiac arrest.

On May 15, 2000, Brandee submitted a claim for the $300,000 in benefits available under the accidental-death policy. Continental denied the initial claim based on an exclusion in the policy. Brandee appealed the denial of the claim, and on July 18, 2000, Continental's Appeals Committee affirmed the denial based on the exclusion. After filing this action, Brandee asked Continental to reconsider its decision in light of additional materials she submitted. Continental reconsidered its denial, but on November 8, 2001, concluded that the claim fell within the exclusion. At this point, all administrative remedies were exhausted.

The parties filed opposing motions for summary judgment. After determining that the policy did not confer discretionary authority to Continental, the district court

---

[2] Michael, age 29, was employed by J. B. Hunt Transport, Inc., and was insured by an accidental death and dismemberment insurance policy provided through Continental. The policy was in full force and effect on April 29, 2000.

denied Brandee's motion for summary judgment and granted Continental's motion. The district court first determined that the doctrine of contra proferentem did not apply in ERISA cases in the Eighth Circuit. On the merits, the district court determined that parachuting fell within the exclusion to the policy because Michael was "riding in a vehicle or device for aerial navigation." Brandee appealed.

## II. *Analysis*

Brandee argues that Michael's parachuting did not fall within the plan's exclusion for certain activities related to air travel and, thus, she and Jordan are entitled to benefits under the accidental-death policy.[3] We review de novo a district court's grant of summary judgment. *Eide v. Grey Fox Technical Services Corp.*, 329 F.3d 600, 604 (8th Cir. 2003). The question before us is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250 (1986); *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992); *St. Paul Fire & Marine Ins. Co. v. FDIC*, 968 F.2d 695, 699 (8th Cir. 1992). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Crain v. Bd. of Police Comm'rs*, 920 F.2d 1402, 1405–1406 (8th Cir. 1990).

---

[3] Brandee also argues that the district court erred in determining that Eighth Circuit case law does not permit the court to apply the contra proferentem doctrine of contract interpretation when an ambiguous term is at issue in an ERISA insurance contract. She asserts that application of the doctrine here would require us to reverse the district court's summary judgment. However, because we find that the applicable policy provisions are unambiguous, we decline the invitation to address the issue in this appeal.

The district court determined that the policy did not confer discretionary authority on Continental to interpret the terms of the policy and, as such, the court applied a de novo standard of review to interpret the policy. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (de novo standard applied when ERISA-governed policy does not confer discretionary authority on administrator of plan). When reviewing an ERISA plan de novo, we interpret the terms of the plan by "giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." *Hughes v. 3M Retiree Med. Plan*, 281 F.3d 786, 789–790 (8th Cir. 2002) (citing *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996)).

Continental's policy provides "Air Travel Coverage" under the following terms:

Air travel coverage under this policy is provided while riding as a passenger, and not as a pilot or crew member, in any aircraft being used for the transportation of passengers.

However, Continental denied coverage under the following exclusion:

This policy does not cover any loss caused by or resulting from:

1. Riding in any vehicle or device for aerial navigation, except as provided under "Air Travel Coverage"; . . . .

The policy does not define the various terms in either provision. Brandee argues that a parachute is not a "vehicle or device for aerial navigation," or, at best, the terms are ambiguous. She asserts that parachuting does not involve "navigation" as that term

is normally understood because parachuting does not involve steering, and a parachute is merely a conveyance used to slow the fall to Earth.

First, we must determine the meaning of the words by "giving the language its common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." *Hughes,* 281 F.3d at 789–790. Webster's Dictionary provides little guidance on whether parachuting qualifies as "air travel" or "aerial navigation" or whether participating in the sport results in one "riding in any vehicle or device for aerial navigation."[4] Therefore, we may look to extrinsic evidence to define the terms.

We have not addressed this particular question in our case law. Other jurisdictions appear to be evenly split as to whether parachuting or similar activities are considered an activity involving "aerial navigation" or some other "aeronautical"

---

[4] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 33 (3d ed. 1993) defines "aerial" as "of or belonging to the air or atmosphere," "of or relating to aircraft," "designed for use in, taken from, or operating from or against aircraft," or "by means of aircraft." It defines "navigation" in relevant part as "the act or practice of navigating" or "the science or art of conducting ships or aircraft from one place to another." *Id.* at 1509. Finally, it defines a "parachute" as a "device . . . for retarding the speed of a body attached to it by offering resistance to the air and used esp. for making a safe descent from an airplane . . . ." *Id.* at 1635.

action.[5] In *Cabell*, for example, the court described the mechanics of parachute flight stating:

> It did not merely float or drift uncontrollably through the air, but was maneuverable to the extent that its direction, speed and rate of descent could be controlled with a considerable degree of accuracy. The fact that it had no power, except for the air, or that it could not travel upward or horizontal for great distances, is not significant. It could be maneuvered or directed through the air, and we think that the insurance policy and the insured must have contemplated that any device capable of doing that was a device for aerial navigation.

---

[5] Cases holding that parachuting does not constitute "aerial navigation," and is not excluded from coverage, include *Triano v. State Farm Mut. Auto. Ins. Co.*, 565 So.2d 748 (Fla. App. Dist. 1990), and *Childress v. Cont'l Cas. Co.*, 461 F. Supp. 704 (E.D. La. 1978), aff'd 587 F.2d 809 (5th Cir. 1979) (per curiam). In addition, some courts have found coverage after determining that a parachute does not constitute an "aircraft" as defined or applied in the policy. *Clark v. Lonestar Life Ins. Co.*, 347 S.W.2d 290 (Tex. Civ. App. 1961); *Hanover Ins. Co. v. Showalter*, 561 N.E.2d 1230 (Ill. App. 1990); *Engel v. Credit Life Ins. Co.*, 377 N.W.2d 342 (Mich. App. 1985).

Cases holding that parachuting is an excluded activity under the policy because it constitutes "aerial navigation" or "participating in aeronautics" include *Edison v. Reliable Life Ins. Co.*, 664 F.2d 1130 (9th Cir. 1981), *Cabell v. World Serv. Life Ins. Co.*, 599 S.W.2d 652 (Tex. Civ. App. 1980), *Smith v. Mut. Benefit Health and Accident Assoc.*, 258 P.2d 993 (Kan. 1953), and *Stajnrajh v. Cont'l Cas. Co.*, 41 Pa. D. & C. 2d 411 (Ct. Comm. Pl. Penn. 1966). In addition, some courts have determined that other non-motorized conveyances, such as hang-gliders, are the type of devices used for "aerial navigation" sufficient to deny coverage. *See Fireman's Fund American Life Ins. Co. v. Long*, 251 S.E.2d 133 (Ga. App. 1978) (hang glider); *Deschler v. Fireman's Fund American Life Ins. Co.*, 663 P.2d 97 (Utah 1983) (waterski kite).

*Cabell*, 599 S.W.2d at 654. The court in *Stajnrajh* also reasoned that the parachutist was the only person in charge and control of the parachute while making the jump. These descriptions and reasoning comport with information Brandee included about parachuting to support her argument that it is not a navigational activity. However, the terminology used in the information implies that the parachuter, both before and after deploying the parachute, has some control over his or her direction such that if he or she wanted to set out in a particular direction, he or she could manipulate his or her hands, body, or the chute's ropes and wings to achieve a change in direction. This implies that parachuting involves "navigation." In addition, Brandee's information includes such terms as "Piloting Techniques," which imply that the parachuter has some navigational control.

We interpret the policy exclusion to apply to Michael's parachuting. Michael piloted or navigated the parachute, and the parachute itself is reasonably defined as a "vehicle or device for aerial navigation." As such, we agree with the district court that the exclusion encompassed Michael's activities and precluded coverage under the ERISA policy.

Finally, Brandee asserts two additional points. First, she argues that Michael was not "riding in" a vehicle or device for aerial navigation because he was suspended from–rather than being "in"–the parachute. We disagree. The construction of a sports parachute includes more than the parachute wings themselves–instead, it includes the ropes, harness, and other essential gear for securing the operator. Certainly, Michael was "in" the harness as he jumped from the plane and descended to the ground.

Second, Brandee argues that Michael's death was not necessarily the result of parachuting as he could have tripped in the field, fallen on his altimeter, and caused the injuries resulting in his death. However, the parties stipulated that Michael suffocated from a crushing injury to his larynx and trachea and that the injury was "due to a high-speed parachute landing." The plan exclusion provides, "[t]his policy does not cover any loss caused by or *resulting from*" prohibited aerial navigation. (Emphasis added.) Because we find that a parachute is a "vehicle or device for aerial navigation" within the meaning of the exclusion, Michael's death "resulted from" riding in the device. *Smith*, 258 P.2d at 997 (court rejected argument that impact, as opposed to aerial descent, was proximate cause of injuries).

For the foregoing reasons, we affirm the district court's summary judgment in favor of Continental.

_____