# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1006
No. 18-1294

_____

Augustine Pacheco; Vicki Hansen, for themselves and others similarly-situated

*Plaintiffs - Appellees*

v.

Honeywell International Inc.

*Defendant - Appellant*

_____

Appeals from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 12, 2018
Filed: March 21, 2019

_____

Before LOKEN, MELLOY, and ERICKSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

This is a class action filed in November 2017 by former Minnesota employees of Honeywell International Inc. who retired before age 65 during the terms of Honeywell's 2007 and 2010 collective bargaining agreements (CBAs) with Local 1145 of the International Brotherhood of Teamsters. Plaintiffs alleged that Honeywell's announced plan to terminate early retiree healthcare benefits at the end

of 2017 breached the CBAs and violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et. seq, because those healthcare benefits vested when each class member retired.[1]  On December 29, 2017, and January 31, 2018, the district court granted Plaintiffs a provisional and then a final preliminary injunction, concluding they had a "fair chance of prevailing" on their claims of vested healthcare benefits.  Honeywell appeals these orders.  On February 20, 2018, the Supreme Court issued its decision in CNH Indus. N.V. v. Reese, 138 S. Ct. 761 (2018).  We agree with the Sixth Circuit that Reese is controlling and conclude that, under Reese, Plaintiffs' retiree healthcare benefits are not vested as a matter of law.  Therefore, we reverse.

I.

"When collective-bargaining agreements create pension or welfare benefits plans, those plans are subject to rules established in ERISA." M & G Polymers USA, LLC v. Tackett, 135 S. Ct. 926, 933 (2015).  ERISA treats pension plans and welfare benefit plans differently.  The statute "imposes elaborate minimum funding and vesting standards for pension plans," but it "explicitly exempts welfare benefits plans from those rules," leaving employers generally free "to adopt, modify, or terminate welfare plans" "for any reason at any time." Id. (citation omitted).  However, though welfare benefits "do not automatically vest as a matter of law" under ERISA, employers and unions may contractually agree to extend welfare benefits beyond the expiration of a CBA. Anderson v. Alpha Portland Indus., Inc., 836 F.2d 1512, 1516 (8th Cir. 1988).  Whether the parties to a CBA intended that the employer would provide vested welfare benefits is a question of contract interpretation. Id.

---

[1]"A 'vested right' is a right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." Maytag Corp. v. UAW, 687 F.3d 1076, 1084 n.5 (8th Cir. 2012) (cleaned up).

In UAW v. Yard-Man, Inc., the Sixth Circuit held that, when an employer and union "contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree." 716 F.2d 1476, 1482 (6th Cir. 1983), cert. denied, 465 U.S. 1007 (1984). Like most other circuits, we never adopted the Yard-Man inference; indeed, we explicitly rejected it as contrary to the statutory exemption of welfare benefits from ERISA's vesting requirements. See Anderson, 836 F.2d at 1517. Rather, we have consistently held that "[t]he absence of any explicit vesting language in [a CBA] is strong evidence of the parties' intent to limit retiree benefits to the term of the [CBA]." John Morrell & Co. v. UFCW, 37 F.3d 1302, 1307 (8th Cir. 1994); see Crown Cork & Seal Co. v. AFL-CIO, 501 F.3d 912, 917-18 (8th Cir. 2007); Anderson, 836 F.2d at 1517-18.

In Tackett, the Supreme Court expressly rejected the Yard-Man inference "as inconsistent with ordinary principles of contract law." 135 S. Ct. at 937. Yard-Man and later Sixth Circuit decisions erred in "refus[ing] to apply general durational clauses to provisions governing retiree benefits," the Court explained, "requiring a contract to include a specific durational clause for retiree health care benefits to prevent vesting." Id. at 936. "Similarly, the Court of Appeals failed to consider the traditional principle that contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." Id. at 937 (quotation omitted). Applying this traditional principle, "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." Id. The Court reiterated these principles in Reese, 138 S. Ct. at 766. Thus, our task in resolving this appeal is to interpret the retiree healthcare benefit provisions of Honeywell's 2007 and 2010 CBAs, applying the ordinary contract principles articulated in Tackett and Reese.

-3-

II.

The retiree healthcare benefit provisions at issue are found in Article 24 of the 2007 and 2010 CBAs. Section 1 provided, "The following insurance and benefit plans . . . shall be implemented and maintained as specified by the time periods outlined below for the duration of this agreement." (Emphasis added.) Section 2 provided that healthcare benefits for those who retired under age 65 prior to May 1, 2007 "will be provided . . . as negotiated under the previous [CBA]." Sections 3 to 6 specified healthcare benefit and benefit contribution levels. Section 8 specified Pension Benefit levels. Sections 9 to 12 provided savings plan and insurance benefits. Section 7, which set forth the new "Retiree Health Care (Pre 65 only)" benefits at issue on appeal, provided:

> The subject of health care benefits for existing and future retirees, their dependents and surviving spouses . . . will be a mandatory subject of bargaining for all future collective bargaining agreement negotiations.

> For all retirees prior to May 1, 2007, the Company will provide healthcare benefits as per the prior collective bargaining agreement, without regard to the limit described below.

> [F]or all retirees after April 30, 2007 the limit upon the Company's contribution for post retirement health benefits shall be 2.0 times the 2007 cost of Local 1145 retiree medical.

> The maximum annual dollar amount contributed by Honeywell for post April 30, 2007 retirees, their dependants, and surviving spouses will be limited to $20,304 for single coverage and $40,608 for family coverage.

> The above limit on Company retiree health care contributions will not apply to any year prior to calendar year 2011.

The Company does not provide healthcare benefits for Local 1145 retirees after age 65.

Article 24, Section 7, of the 2010 CBA contained the same retiree healthcare benefit provisions except that the first paragraph was omitted and a "Special Retirement Program" was added:

> Effective February 1, 2010, for each employee who terminates and retires on or after February 1, 2010 -- Honeywell will not contribute any amount towards the annual retiree medical premium except under the following "Special Retirement Program" provision:

> Employees who provide the Company with at least four (4) months advance written notice of his or her irrevocable decision to retire on a date certain between August 1, 2010 and February 1, 2013 and are not terminated for cause will be eligible for retiree medical coverage under the 1145 retiree medical plan with respect to which Honeywell will contribute towards the annual retiree medical premium.

> The plan design for retiree medical for any employee retiring after February 1, 2010, will be the same as the 1145 active medical plan design as such plan changes from time to time.

The 2007 and 2010 CBAs also contained substantially identical general duration provisions. We set forth the 2010 CBA provision:

> Section 1. This Agreement shall become effective February 1, 2010 and shall remain in full force and effect up to midnight January 31, 2013. This Agreement shall remain in full force and effect from year to year thereafter unless notice of intention to terminate or modify this Agreement is given at least sixty (60) days prior to February 1, 2013 or any anniversary date thereafter. Notice to modify shall reopen the Agreement only with respect to the terms designated in such notice. . . .

Section 2. The parties agree that during the term of this Agreement, economic issues including fringe benefits shall not be subject for collective bargaining negotiations between the parties.

The summary plan descriptions (SPDs) required by ERISA stated that Honeywell reserved the right to eliminate or modify healthcare benefits at any time.

The 2013 CBA continued healthcare benefits for past retirees but stated that employees who retired after the 2013 CBA took effect would "pay the full unsubsidized cost of retiree healthcare." On February 1, 2017, Honeywell and the union signed a Memorandum of Agreement allowing Honeywell to "terminate retiree healthcare benefits for current retirees no sooner than December 31, 2017 with at least 6 months notice to retirees prior to termination."[2] Honeywell gave retirees that notice in March 2017. This class action lawsuit was then filed on behalf of retirees who retired while the 2007 and 2010 CBAs were in effect.

The district court granted Plaintiffs a preliminary injunction enjoining Honeywell from terminating retiree healthcare benefits prior to adjudication of Plaintiffs' claims on the merits. In granting relief, the court properly analyzed the four factors set out in Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc) -- irreparable injury, likelihood of success on the merits, balance of harms, and the public interest in granting or denying a preliminary injunction. However, as we conclude the 2007 and 2010 CBAs did not grant Plaintiffs vested early retiree healthcare benefits, an issue of contract interpretation we review *de novo*, that is the only Dataphase factor we need address. See Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005) ("[A]n injunction cannot issue if there is no chance of success on the merits.").

---

[2]Consistent with this Memorandum, Article 24 of the 2017 CBA eliminated the prior Retiree Health Care (Pre 65 only) provisions.

-6-

In concluding that Plaintiffs have a sufficient likelihood of success on the merits, the district court ruled in the alternative (i) that the plain language of the CBAs unambiguously demonstrates that Honeywell and the union intended to confer vested pre-65 retiree healthcare benefits from an employee's early retirement until age 65, and (ii) even if the CBA language is ambiguous, plaintiffs submitted extrinsic evidence that sufficiently supports finding intent to vest those benefits. But if we conclude, as we do in this case, that an ERISA-governed document is unambiguous, "we examine no extrinsic evidence." Hughes v. 3M Retiree Med. Plan, 281 F.3d 786, 793 (8th Cir. 2002). Thus, we do not reach the court's alternative ground because the CBAs cannot "reasonably be read as vesting health care benefits" until Plaintiffs reach age 65. Reese, 138 S. Ct. at 765.

In Reese, the Supreme Court considered an expired CBA that "contained a general durational clause that applied to all benefits," and "[n]o provision specifying that the health care benefits were subject to a different durational clause." 138 S. Ct. at 766. The Court held that the retirement health care benefits were not vested as a matter of law because "the only reasonable interpretation of the [CBA] is that the health care benefits expired when the [CBA] expired." Id. Plaintiffs properly note that lifetime retirement healthcare benefits were at issue in Reese, whereas they seek vested benefits of a lesser duration, to age 65. However, two weeks after the decision in Reese, the Sixth Circuit took up this issue in Cooper v. Honeywell Int'l, Inc., and held that employees who retired at a Honeywell plant in Michigan under a CBA providing that "[r]etirees under age 65 . . . will continue to be covered under the [applicable Medical] Plan, until age 65" did not receive vested benefits. 884 F.3d 612, 614 (6th Cir. 2018). The court applied Reese's command "that general durational clauses should dictate when benefits expire, unless an alternative end date is provided," id. at 618, and held that this CBA unambiguously did not provide vested retiree healthcare benefits:

A promise to continue providing benefits in a CBA -- whether that promise is left open-ended, or whether, as here, it has a specific terminus -- does not by itself vest those benefits in retirees beyond the CBA's expiration. All it does is (1) provide a guarantee of those benefits while the CBA is in effect and (2) provide for the expiration of those benefits even before the CBA itself expires. . . . That language also protects retirees by ensuring Honeywell cannot prematurely terminate benefits for eligible, under-age-65 retirees.

Id. at 619-20.

We agree with the Sixth Circuit's analysis in Cooper. However, that does not end the inquiry in this case because the district court properly focused on specific language in the 2007 and 2010 CBAs. The court concluded that Article 24, Section 7, of the 2007 CBA was "sufficiently specific in duration" to overcome the CBA's general durational clause because it limited Honeywell's "retiree health care contributions" beginning in calendar year 2011, after the three-year contract expired in 2010. Likewise, the court concluded that the Special Retirement Program in Section 7 of the 2010 CBA "constituted an express promise of specific duration" because it provided that employees who retired "between August 1, 2010 and February 1, 2013" were eligible for retiree medical coverage, and January 31, 2013 was "technically, the last day of the term of the agreement."

We cannot agree that these specific provisions are a sufficient basis to disregard the Supreme Court's analysis of durational clauses in Tackett and Reese. First, the district court considered only the general durational clauses in both CBAs. It disregarded the specific durational clause in Article 24, Section 1, that specifically applied to the retiree healthcare benefits in Section 7. In Tackett, the Supreme Court criticized Sixth Circuit decisions for "requiring a contract to include a specific durational clause for retiree health care benefits to prevent vesting." 135 S. Ct. at 936. Here, we are interpreting CBAs that included both a general and a specific durational clause. "Read in tandem, these two [durational] clauses unambiguously

promise healthcare benefits [for] the 'duration' of the agreement." Watkins v. Honeywell Int'l Inc., 875 F.3d 321, 326 (6th Cir. 2017).

Second, we disagree with the district court's conclusion that Section 7 unambiguously reflected an intent to confer vested retiree healthcare benefits. The provisions noted by the district court must also be read in the context of the CBAs' general durational clauses, which provided (i) that each CBA "shall remain in full force and effect from year to year" *after* its initial expiration date unless one party gives notice of its intent to terminate or modify the CBA, and (ii) that "issues including fringe benefits shall not be subject for collective bargaining" during the term of the CBA. Reading these contractual provisions as a whole, putting a limit on Honeywell's retiree benefit contributions beginning in 2011 did not reflect an intent to provide vested benefits after the 2007 CBA expired. Rather, it put in place a collectively bargained limit that would apply after the initial three-year term until the CBA expired because one party gave timely notice of intent to modify. Even then, the limit would continue in the modified CBA if the notice to modify did not include that provision, as happened in the 2010 CBA. Likewise, the provision in the Special Retirement Program in Section 7 of the 2010 CBA making employees who retired "between August 1, 2010 and February 1, 2013" eligible for retiree healthcare benefits did not reflect an intent to provide vested benefits beyond the term of the CBA. It simply specified the benefits that would continue to be paid if the CBA remained in effect after January 31, 2013, the end of its three-year term, because neither party gave notice of intent to modify.

In addition to the general and specific durational clauses, properly construed under Tackett and Reese, there are other provisions in the 2007 and 2010 CBAs that confirm an unambiguous intent not to confer vested retiree healthcare benefits. First, the SPDs that accompanied the CBAs reserved for Honeywell "the right to terminate the Plan, or any portion of the Plan, at any time and for any reason except as limited by the provisions of any applicable Federal or State law or the provisions of a written

-9-

[CBA]." "We have repeatedly held that an unambiguous reservation-of-rights provision is sufficient without more to defeat a claim that retirement welfare plan benefits are vested." Maytag, 687 F.3d at 1085 (citations omitted). Consistent with ERISA, the CBAs referred both employees and retirees to the SPDs for details regarding the Healthcare Plan.

Second, both the 2007 and 2010 CBAs explicitly extended healthcare benefits for past retirees. As the Sixth Circuit explained in Cooper, "if a promise that retirees will continue to be covered until age 65 vested those benefits -- notwithstanding a CBA's intervening expiration -- then why would each successive CBA need to repeat the same promise? . . . . The only reasonable inference, of course, is that the parties did not believe this language created a vested right to lifetime healthcare benefits and thus had to include it in each new CBA." 884 F.3d at 620 (citation omitted); see Morrell, 37 F.3d at 1307 (providing "continued health benefits for past retirees is evidence that prior benefits were not vested").

Third, Article 24 of the 2007 CBA explicitly made early retiree healthcare benefits a mandatory subject of collective bargaining, suggesting that these benefits were subject to negotiation, not inalterably fixed. Cf. Tackett, 135 S. Ct. at 936. Thereafter, Honeywell and the union negotiated modifications to those benefits in the 2010 and 2013 CBAs, with no objection that such changes violated vested rights. "[T]he fact that modifications were routinely negotiated is fundamentally inconsistent with the notion that *any* retirement health benefits were *ever* vested." Morrell, 37 F.3d at 1307.

Finally, the lack of explicit vesting language in the CBAs and their accompanying SPDs is even stronger evidence of the parties' intent not to provide vested healthcare benefits when viewed together with specific references in the pension plan SPDs to "vested pension benefits" and "vested terminated employees." Morrell, 37 F.3d at 1307; accord Cooper, 884 F.3d at 620-21. As the Supreme Court

noted in Reese, "[i]f the parties meant to vest health care benefits for life [or until age 65], they easily could have said so."  138 S. Ct. at 766.

For these reasons, we conclude that the 2007 and 2010 CBAs unambiguously reflected the parties' intent to adopt non-vested "Retiree Health Care (Pre 65 only)" healthcare benefits.  In these circumstances, though Plaintiffs submitted declarations and other evidence that Honeywell and its staff made representations that early-retiring employees would be "guaranteed healthcare until 65" if they retired before February 2013, "extrinsic evidence *may not be considered*."  Maytag, 687 F.3d at 1086 (emphasis in original).  Thus, Plaintiffs have no likelihood of success on their claims that Honeywell's termination of early retiree healthcare benefits breached either the CBAs or the ERISA plans, and the grant of a preliminary injunction must be reversed.

The Orders of the district court dated December 29, 2017, and January 31, 2018 are reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

_____