# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

No. 02-1572
_____

Linda M. Eide, Anita J. Barber,   *
Jack T. Chandler, John E. Coss,   *
Alice M. Hruska, Veronica R.   *
Mathison, Dale E. Miller, Robert J.   *
Pechmann, David F. Ross, Kathleen   *
J. Sheehan, Sandra K. Skrove,   *
Reed T. Weseloh,   *
   *
      Plaintiffs/Appellants,   *
   *
Dorothy E. Woodington,   *
   *  Appeal from the United States
      Plaintiff,   *  District Court for the
   *  District of Minnesota.
Larry A. Block, Robert S. Boyum,   *
Lawrence D. Bross, Betty J. Carlson,   *
   *
      Plaintiffs/Appellants,   *
   *
Fu-Gin Chen,   *
   *
      Plaintiff,   *
   *
William P. Cress, Charles Debevec,   *
Richard E. Kulla,   *
   *
      Plaintiffs/Appellants,   *
   *
David M. Lee,   *
   *
      Plaintiff,   *

|                                              |     |
|----------------------------------------------|-----|
|                                              | *   |
| Sandra K. Lyke, Joseph Marquardt,            | *   |
| Sandra M. Nelson, Tuan Nguyen,               | *   |
| Dale A. Severude, Sharon Skaiem,             | *   |
| Shirley A. Stene, Ronald W. Sweezo,          | *   |
|                                              | *   |
|     Plaintiffs/Appellants, | * |
|                                              | *   |
| Suzanne A. Tuenge, Nancy J. Wikre,           | *   |
|                                              | *   |
|     Plaintiffs,          | *   |
|                                              | *   |
|     v.                    | *   |
|                                              | *   |
| Grey Fox Technical Services                  | *   |
| Corporation, formerly known as Grey          | *   |
| Fox Technology; General Dynamics             | *   |
| Information Systems, Inc.; Grey Fox          | *   |
| Technology Acquisition Corporation,          | *   |
| jointly and severally,                       | *   |
|                                              | *   |
|     Defendants/Appellees. | *  |

_____

Submitted:  November 7, 2002

Filed:  May 22, 2003
_____

Before LOKEN,[1] Chief Judge, LAY, and WOLLMAN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

_____

    [1]The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

Former employees (Employees) of Ceridian Corporation's Computing Device International division (Ceridian) initiated this action in Minnesota state court against Grey Fox Technical Services Corporation and Grey Fox Technology Acquisition Services (Grey Fox) and General Dynamics Information Systems (General Dynamics), Ceridian's successor in interest, to recover severance benefits allegedly owed to them by Ceridian. Grey Fox and General Dynamics removed the case to federal district court, asserting jurisdiction based on the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. See 28 U.S.C. § 1441(b). The district court held that Employees' state law claims were preempted by ERISA and thus were properly removed to federal court. Employees appeal the district court's grant of summary judgment in favor of Grey Fox and General Dynamics and assert that removal was improper, as their claims are not preempted by ERISA. We agree, and we therefore vacate the district court's judgment and remand the case to the district court with instructions to remand to the state court for further proceedings.

## I. Background

Twenty-seven former employees of Ceridian's Technology Center initiated this action in Minnesota state court under the provisions of the Minn. Stat. § 181.64, alleging breach of contract and implied contract, promissory estoppel, and false statements as inducement to entering employment. Employees sought to recover severance pay and compensation for paid days off accrued during their tenure at Ceridian. While employed at Ceridian's Technology Center, Employees participated in a benefits plan, the Ceridian Corporation Severance Pay Plan (Ceridian plan), pursuant to which they received paid days off and were guaranteed severance payments. Only "active, full-time employees who . . . are employed by Ceridian or any one of the affiliate operations which have adopted the Plan" were eligible to participate in the Ceridian plan and receive consequent benefits.

-3-

In late 1995, Ceridian management announced that it was negotiating with Grey Fox to sell the Technology Center. On April 26, 1996, M. L. Dyste, Ceridian's Vice President, wrote to Employees, informing them that Grey Fox offered them employment at their "current job descriptions, responsibilities, and base rate of pay." Employees, the majority of whom had been employed by Ceridian for more than a decade, some for more than thirty years, had accrued substantial severance benefits, as well as compensation for paid days off. Employees were concerned that the sale of the Technology Center would adversely affect the value of and their ability to obtain their severance benefits.

Employees allege that Ceridian management, aware of Employees' concerns, guaranteed that if they accepted employment with Grey Fox, and Grey Fox subsequently terminated them within their first year of employment, Ceridian would pay them severance equal to that which they would have received under the Ceridian plan. Dyste's April 26, 1996, letter to Employees informed them that should they decline to become employees of Grey Fox, they would be ineligible for severance under the Ceridian Plan: "As a matter of company policy, when employees receive an offer of employment from the buyer of a Ceridian business and refuse such an offer, those employees are considered to have terminated voluntarily from the Company and are ineligible for severance." The letter did not address Ceridian's statements concerning covering severance benefits for employees who transferred to Grey Fox.

Ceridian sold the Technology Center to Grey Fox in May 1996. Employees accepted employment with Grey Fox. Employees contend that they relied upon Ceridian's guarantee that they would receive severance pay should Grey Fox terminate them within their first year of employment with Grey Fox. At the time of the sale, Employees had accumulated in aggregate more than $800,000 in severance payments and were owed $116,100 as compensation for paid days off.

Between October and December 1996, Employees were terminated by Grey Fox. Both Grey Fox and Ceridian refused to pay Employees severance benefits. On December 31, 1997, General Dynamics purchased Ceridian's Computing Device International division and assumed Ceridian's liability in this litigation.

The district court granted summary judgment in favor of Grey Fox and General Dynamics, holding that Employees' state common law and statutory claims to recover severance benefits were preempted by ERISA. The court determined that Employees could not recover severance pay based on Ceridian's alleged oral promise because such a delivery of benefits would be inconsistent with the terms of the Ceridian Plan and because ERISA does not permit oral modifications of existing plans. The court declined to grant summary judgment to either party on the issue of remuneration for paid days off, holding that Grey Fox and General Dynamics did not dispute that Employees were owed compensation reflecting paid days off accrued while at Ceridian. The parties stipulated to a settlement of the claims concerning paid days off. A final judgment was entered concerning the grant of summary judgment on the ERISA issue, from which Employees now appeal.

## II.

Our jurisdiction is founded on the district court's determination that Employees' claims relate to an ERISA plan and are preempted by ERISA. We therefore must consider first whether the promise of severance payments was premised on or amended an ERISA plan. Shea v. Esensten, 107 F.3d 625, 627 (8th Cir. 1997). We review de novo the district court's determination of ERISA preemption. Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 931 (8th Cir. 1999); Wilson v. Zoellner, 114 F.3d 713, 715 (8th Cir. 1997).

We review de novo a district court's grant of summary judgment. Toghiyany v. AmeriGas Propane, Inc., 309 F.3d 1088, 1091 (8th Cir. 2002). "We will affirm a

grant of summary judgment if 'the evidence, when viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000)); Fed. R. Civ. P. 56(c). If, however, "the evidence presents a sufficient disagreement . . . [and is not] so one-sided that one party must prevail as a matter of law[,]" summary judgment should not have been granted, and we must reverse the district court. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

A.

The Ceridian Plan is an "employee welfare benefit plan" as defined by ERISA. 29 U.S.C. § 1002(1) (defining employee welfare benefit plan as "any plan . . . established or maintained by an employer . . . for the purpose of providing for its participants . . . benefits in the event of . . . unemployment . . . or any benefit described in section 186(c) of this title"). ERISA "supersede[s] any and all State laws [that] relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a); Shea, 107 F.3d at 627. ERISA, therefore, preempts state common law causes of action that reference or pertain to an ERISA plan. Shea, 107 F.3d at 627 (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987)). Actions initiated in state court that are within the scope of and are preempted by ERISA may be removed to federal court. Crews v. Gen. Am. Life Ins. Co., 274 F.3d 502, 505 (8th Cir. 2001) (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 64-67 (1987)).

The district court held that removal of Employees' claims was proper because it determined that Employees' claims were related to the Ceridian plan and thus were preempted by ERISA. See id. Thus, the threshold question that we must decide is whether Ceridian's alleged promise to pay Employees severance was premised on or amended an employee benefit plan, such that any state common law or statutory

causes of action to enforce Ceridian's alleged promise would "relate to" an ERISA plan.

A company's delivery of benefits to employees or former employees constitutes an ERISA benefit plan when the payment arrangement has specific characteristics. See Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11-12 (1987). An arrangement to provide benefits to employees does not invoke ERISA's protections solely because it delivers benefits; not all policies, or disbursement schemes, providing severance payment benefits are ERISA plans. Fort Halifax, 482 U.S. at 11-12; Crews, 274 F.3d at 506-07; Velarde v. Pace Membership Warehouse, 105 F.3d 1313 (9th Cir. 1997); Kulinski v. Medtronic Bio-Medicus, Inc., 21 F.3d 254, 256 (8th Cir. 1994) ("An employer's decision to extend benefits does not constitute, in and of itself, the establishment of an ERISA plan."); Sherrod v. Gen. Motors Corp., 33 F.3d 636, 639 (6th Cir. 1994); Fontenot v. NL Indus. Inc., 953 F.2d 960, 962 (5th Cir. 1992); Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1532-33 (3d Cir. 1992).

Whether an ERISA plan exists, or whether benefits are premised on an ERISA plan, may be determined by whether the employer requires "an ongoing administrative program to meet [its] obligation." Fort Halifax, 482 U.S. at 12. "An ongoing administrative scheme" is necessary when "to determine the employees' eligibility for and level of benefits[, the employer] must analyze each employee's particular circumstances in light of the appropriate criteria." Kulinski, 21 F.3d at 257. An ongoing administrative scheme is unnecessary, however, when severance payments may be calculated by "simple or mechanical determinations." Id. For example, the "requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." Fort Halifax, 482 U.S. at 12. A "one-time, lump sum payment," furthermore, is inconsistent with ERISA plans because "the delivery of benefits [does not create] an on-going demand on employer assets. A plan may be an ERISA plan if the employer 'assumes . . . responsibility to pay benefits on a regular basis, and thus

faces . . . periodic demands on its assets that create a need for financial coordination and control.'" Cassidy v. Akzo Nobel Salt, Inc., 308 F.3d 613, 616 (6th Cir. 2002) (quoting Fort Halifax, 482 U.S. at 12). Thus, when benefit disbursement arrangements lack the characteristics of and are formally inconsistent with ERISA plans, they do not constitute ERISA plans. See Fort Halifax, 482 U.S. at 8.

Ceridian allegedly promised Employees that they would receive severance benefits if Grey Fox terminated them within their first year of employment. Pursuant to this promise, benefits would be awarded automatically and mechanically if the specific conditions of termination were satisfied. Payment of benefits would not create an on-going demand on Ceridian's assets. According to the record, the amount of the severance pay to be distributed to Employees upon their termination was set as of the last date of Employees' employment with Ceridian. During the course of this litigation, Ceridian has not disputed the specific amounts of severance pay claimed by Employees. Because Ceridian's benefits determinations for the Employees were set as of Employees' final date of employment at Ceridian, the determinations were not "made on an individual, ongoing basis, after exercising discretion . . . ." Emmenegger, 197 F.3d at 935 (citation omitted).[2] Although the benefits to be paid to Employees were calculated according to the formulas provided by the Ceridian plan, they were not to be delivered pursuant to that plan. Instead, Employees were to receive a lump-sum payment of benefits in the event that Grey Fox terminated them within their first year of employment.

_____

[2]

| Standard Formula | | Enhanced Formula (Service Exceeds 10 Years) |
|---|---|---|
| *Length of Service* | *Severance Pay* | *Severance Pay* |
| **More than 1 year** | **1 week's base pay for each full year of service** | **1 week's base pay for each full yr. of service for the first 10 years of service; plus 2 week's base pay for each full yr. of service after 10 yrs .** |

No "ongoing administrative scheme" is required for Ceridian to meet its obligations to Employees. Once Grey Fox terminated Employees, "there was nothing for [Ceridian] to decide, no discretion for it to exercise, and nothing for it to do but write a check." Kulinski, 21 F.3d at 258. As in Fort Halifax, Ceridian's obligation to pay severance to Employees

> is predicated on the occurrence of a single contingency that may never materialize. The employer *may* well *never* have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees . . . . To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the [former] employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

Fort Halifax, 482 U.S. at 12 (first emphasis added) (footnotes omitted). As in Crews, where we held that differences between the existing ERISA plan and the promised benefits led us "to conclude that the promised benefits were free-standing and were not premised in any way on the existing plan," Crews, 274 F.3d at 505-06, Ceridian's promise to provide severance to Employees if terminated by Grey Fox within their first year of employment does not constitute an ERISA plan or demonstrate that the promised benefits were premised on an ERISA plan.

### B.

ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to an written instrument." 29 U.S.C. § 1102(a)(1). Courts have interpreted § 1102(a)(1) to preclude oral modifications of or amendments to ERISA

plans. United Paperworkers Int'l Union v. Jefferson Smurfit Corp., 961 F.2d 1384, 1386 (8th Cir. 1992). The district court granted summary judgment in favor of Grey Fox and General Dynamics in part because it reasoned that the oral promise by Ceridian to provide severance to Employees, if terminated by Grey Fox, constitutes an impermissible oral amendment to the Ceridian plan, as it contradicts the terms of the Ceridian plan that detail when severance payments will be made to participants in that plan. The district court determined as a matter of law that "oral statements, in the presence of an existing, formal ERISA plan, cannot be enforced."

Oral statements are unenforceable under ERISA when they amend or supersede contradictory terms in an ERISA plan. United Paperworkers Int'l Union, 961 F.2d at 1386. The Ceridian Plan provides, "Severance pay may be paid to full-time employees to help ease the financial burden that may result from work force adjustment or a mutual agreement resignation. Severance pay is pay received in addition to regular wages upon termination." The plan explicitly states that only "active, full-time employees who . . . are employed by Ceridian" may participate in the plan and will be eligible for benefits pursuant to the plan.

An ERISA plan "'participant' is naturally read to mean either 'employees in, or reasonably expected to be in currently covered employment,' or former employees who 'have . . . a reasonable expectation of returning to covered employment' or who have 'a colorable claim' to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1989) (quotations omitted). "A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.'" Id. Employees had not been active, full-time employees of Ceridian for more than six months when they were terminated by Grey Fox. They were not in "covered employment," nor did they have the option or expectation of returning to work for Ceridian. There is nothing in the record to support a finding of any intent on the part of Ceridian or Employees to amend the plan so as to extend Employees'

-10-

participation therein. Furthermore, Employees' severance benefits did not continue to accrue after their employment at Ceridian had ended, as they conceivably would have had Employees remained participants in the plan.

The severance benefits allegedly guaranteed Employees as inducement to transfer to Grey Fox were fixed as of Employees' final date of employment at Ceridian, which was also the final date of their participation in the Ceridian plan. Because Employees were no longer participants in the Ceridian Plan and because they were not full-time employees of Ceridian at the time Grey Fox terminated them, they were ineligible for severance under the Ceridian plan.[3] Thus, we conclude that Ceridian's promise to pay severance benefits to Employees if they were terminated by Grey Fox within their first year of employment did not amend the Ceridian plan, but rather constituted a free-standing contract providing severance payments upon the occurrence of some future contingency. "We discern nothing in the record to indicate that the alleged promise constituted a change in [Ceridian's] plan as opposed to a distinct, one-time offer of benefits. . . . [T]he promised benefits were free-standing . . . ." Crews, 274 F.3d at 505; cf. Stearns v. NCR Corp., 297 F.3d 706, 711 (finding that an enhanced benefit program amended an existing ERISA plan where the benefits provided by the program were insufficiently explained in the documents distributed to beneficiaries and the documents advised beneficiaries to "refer to [the ERISA plan] booklet . . . for the details of the [program;]" and, documents by which

---

[3]The Ceridian plan states, "Severance is available to eligible employees in the following circumstances: When loss of employment results from work force adjustment due to job elimination or restructuring. When loss of employment results from a mutual agreement resignation initiated by the Company and agreed to by the employee. Severance pay is not paid in the case of a divestiture (including sale or transfer to a purchaser of any portion of a Ceridian business unit, or its assets, with no break in employment) or for any other reason or form of separation not previously identified. Severance is only paid if the employee signs a release of all claims provided by the Company."

employer adopted the program "confirm[ed] that it was an amendment to the existing employee benefit plans).

ERISA's preemption of conflicting state laws enables employers to devise and operate benefit plans without concern that they accommodate conflicting regulatory schemes. Fort Halifax, 482 U.S. at 10-11; see also Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 105 n.25 ("Obligating the employer to satisfy the varied and perhaps conflicting requirements of particular state fair employment laws . . . would make administration of a uniform nationwide plan more difficult."); Wilson, 114 F.3d at 715. Nevertheless, ERISA was not intended to be construed so broadly as to protect employers from legal recourse for their actions that were taken in knowing violation of state law. See generally Egelhoff v. Egelhoff, 532 U.S. 141, 147 (2001) (enumerating purposes of ERISA).

Where, as here, "federal subject matter jurisdiction is based on ERISA, but the evidence fails to establish the existence of an ERISA plan, the claim must be dismissed for lack of subject matter jurisdiction." Kulinski, 21 F.3d at 256 (8th Cir. 1994) (citing Harris v. Arkansas Book Co., 794 F.2d 358, 360 (8th Cir. 1986); Jader v. Principal Mut. Life. Ins. Co., 925 F.2d 1075, 1076-77 (8th Cir. 1991)). Because the claims at issue here do not relate to an ERISA plan and therefore are not preempted by ERISA, jurisdiction is lacking. See 28 U.S.C. § 1331; 28 U.S.C. § 1441(b). Accordingly, the judgment is vacated, and the case is remanded to the district court with directions that the case be remanded to the state court from which it was removed.

LOKEN, Chief Judge, concurs in the result.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.