**John D. HINTZE, Plaintiff,**

v.

**PIONEER HI-BRED INTERNATIONAL, INC., Defendant.**

**No. 4:04-CV-90483.**

United States District Court, S.D. Iowa, Central Division.

Dec. 15, 2004.

Randall H. Stefani, Ahlers Cooney Dorweiler Haynie Smith & Allbee, Colin J. Witt, Ahlers Cooney Dorweiler Haynie

Smith & Allbee, Des Moines, IA, for John D. Hintze, Plaintiff.

Michael A. Giudicessi, Faegre & Benson, Des Moines, IA, Paul W. Heiring, Faegre & Benson, Minneapolis, MN, William J. Hunnicutt, Faegre & Benson, Des Moines, IA, Steven L. Severson, Faegre & Benson, Minneapolis, MN, for Pioneer Hi–Bred International, Inc., Defendant.

## ORDER

PRATT, District Judge.

Before the Court is Plaintiff's Motion to Remand. Clerk's No. 9. Plaintiff, John D. Hintze ("Hintze"), filed a Petition for Declaratory Judgment in the Iowa District Court for Polk County, requesting interpretation of paragraph six of the Severance Agreement ("Agreement") between the parties. The paragraph in question provides, in relevant part: "JH is entitled to his vested rights in the Pioneer Retirement Plan."[1] Defendant, Pioneer Hi–Bred International, Inc. ("Pioneer"), removed the action to federal court pursuant to 28 U.S.C. sections 1441(a) and (b) on the basis of federal subject matter jurisdiction. *See* 28 U.S.C. § 1331; *see also* 28 U.S.C. § 1332(e)(1) (ERISA's express jurisdictional provision). Pioneer argues for federal jurisdiction because the "Pioneer Retirement Plan" is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1101 *et seq.* Hintze moved to remand the case, arguing that the question presented in his petition does not invoke federal subject matter jurisdiction because it involves only an interpretation of the Agreement, independent of ERISA. Pioneer filed a Resistance to Hintze's

motion, to which Hintze submitted a Reply brief. The matter is fully submitted.

## I. BACKGROUND

Hintze served as general counsel for Pioneer until he resigned on October 3, 1994. As part of this resignation, the parties signed the Agreement. The Agreement was signed by Hintze on October 13, 1994, and by Pioneer on October 14, 1994. The Agreement set forth various benefits allowed to Hintze including; "[h]is vested rights in the Pioneer Retirement Plan." In return for these benefits, Hintze agreed to "release any and all claims he may have against Pioneer, its officers, directors, shareholders and/or agents arising from his employment, the end thereof or for any other reason." The monetary value of Hintze's vested rights in the Pioneer Retirement Plan is not set forth in the Agreement.

Hintze argues that "Pioneer Retirement Plan" in the Agreement, although only one term, includes benefits from two separate retirement plans, both of which are ERISA plans. The first is the Pioneer Retirement Plan ("Retirement Plan"), in which Hintze is a qualified participant. The second is the GAP Retirement Plan ("GAP Plan"), for which Hintze does not qualify. Hintze argues, however, that the Agreement language entitles him to benefits calculated according to the GAP Plan. His affidavit states: "Prior to signing my severance agreement with Pioneer, Pioneer and I agreed that my 'Pioneer retirement plan' would include benefit amounts calculated on the basis of the non-qualified GAP plan, for which I would have become eligible had I remained with the company." In support of this statement, Hintze submitted to this Court a "letter of confirmation,"[2] which sets forth benefit amounts

---

**1.** The initials JH refer to Plaintiff, John D. Hintze.

**2.** It is unclear whether the letter submitted by Hintze is a letter of confirmation. The letter,

payable from "both the qualified Retirement Plan and the non-qualified GAP plan."

Hintze does not contest that he has vested rights in the qualified Retirement Plan, or that these rights spring not from the Agreement, but from the ERISA plan. Nor does he contest that the qualified Retirement Plan is generally referred to as the Pioneer Retirement Plan.[3] The vesting requirements under the qualified Retirement Plan are stated in Article VII of the plan itself. Hintze's argument, rather, is that based on his negotiations with Pioneer prior to signing the Agreement, the parties intended "vested rights in the Pioneer Retirement Plan" to mean both rights under the qualified Retirement Plan and the non-qualified GAP Plan.

Pioneer argues that "Pioneer Retirement Plan" in the Agreement refers only to Hintze's vested benefits in the qualified Retirement Plan and does not include additional benefits calculated by the standards set forth in the non-qualified GAP plan. Due to this dispute, Hintze filed a petition for declaratory relief, requesting that

> the court enter a declaratory judgment in favor of plaintiff and against defendant to the effect that Defendant is bound by the terms of the Severance Agreement, including the October 19, 1994 letter of confirmation, and is required to pay to plaintiff the additional amount per month which defendant now refuses to pay, together with costs and

for all other relief as the court may deem just and equitable under the circumstances.

Hintze asserts that this relief can be granted without reference to ERISA plan terms. The issue in this motion for remand is whether that promise is independent of the ERISA plan, or rather, if the promise was premised on or amended an ERISA plan. If the latter is true federal subject matter jurisdiction has attached and Pioneer's removal was proper.

## II. ANALYSIS

■ This Court, as a court of limited jurisdiction, has a duty to assure itself that it has subject matter jurisdiction in every case. *See Barclay Square Prop. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969 (8th Cir.1990); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987). Indeed, "the requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Godfrey v. Pulitzer Pub. Co.*, 161 F.3d 1137, 1141 (8th Cir.1998). Pioneer removed the state petition on grounds of federal question jurisdiction. Federal question jurisdiction is limited to "cases arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331.

■ Generally, "determining whether a particular case arises under federal law turns on the 'well-pleaded complaint' rule."

---

dated October 19, 2004, does not list Hintze as a recipient. Mary de Regnier from Pioneer's Department of Human Services authored the letter and sent it to Mike Davis and Dan Cornelison, both Pioneer employees. The letter states that it sets forth, "the retirement summary for John Hintze, including the benefit amounts payable from both the qualified Retirement Plan and the non-qualified GAP plan." Nowhere does it state that it is a

letter of confirmation, nor that the term "Pioneer Retirement Plan" is to include the totals from both plans.

**3.** The Retirement Plan, which Pioneer submitted with its Resistance brief, is entitled "Pioneer Hi–Bred International Inc. Retirement Plan (As Amended and Restated Effective January 1, 1994)."

*Aetna Health Inc. v. Davila*, —— U.S.; ——, 124 S.Ct. 2488, 2494, 159 L.Ed.2d 312 (2004) (citing *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420(1983)). Under the "well-pleaded complaint" rule, the question of whether a case involves a federal question is determined by looking at the face of the complaint. *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218(1914). Hintze's state petition does not seek relief under any federal laws. However, one exception to the "well-pleaded complaint" rule is the "complete pre-emption" doctrine. Pre-emption occurs "[w]hen a federal statute wholly displaces the state-law cause of action . . . ." *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). "ERISA is one of these statutes." *Aetna Health Inc.,* —— U.S. at ——, 124 S.Ct. at 2495.

■■■ "It is well established that ERISA's civil enforcement provisions are the exclusive remedies for participants seeking to recover benefits under an ERISA plan." *Johnson v. U.S. Bancorp,* 2004 U.S.App. LEXIS 22679 * 4 (8th Cir. 2004) (citing 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52–56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Fink v. Dakotacare,* 324 F.3d 685, 688–89 (8th Cir.2003)). Part of ERISA's civil enforcement provisions state that a civil action can be brought by a plan participant, "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502, 29 U.S.C. § 1132(a)(1)(B). Therefore, the question before the Court turns on whether interpretation of the Agreement involves the analysis of terms of an ERISA plan.

Neither party argues that the Agreement, itself, is an ERISA plan. Instead the question is whether "the promise of severance payments was premised on or amended an ERISA plan." *Eide v. Grey Fox Tech.* 329 F.3d 600, 604 (8th Cir.2003) (citing *Shea v. Esensten,* 107 F.3d 625, 627 (8th Cir.1997)). As stated previously, Hintze argues that the term "Pioneer Retirement Plan" incorporates two separate sets of benefits. The first set of benefits originate from the Retirement Plan. There is no doubt that the promise, in the Agreement, of vested benefits under the Retirement Plan was premised on the ERISA plan. Hintze was a qualified participant in the Retirement Plan and the plan itself determined whether his rights had vested. *See Johnson,* 2004 U.S.App. LEXIS 22679 *6 ("The alleged promise was that benefits would be paid in accordance with the CIC Program."). His rights in the benefits under the Retirement Plan did not originate from the Agreement, but rather, were preserved in the Agreement.

In contrast are Hintze's claims to GAP Plan benefits. Hintze is not qualified for GAP Plan benefits, nor would he have any claim to them, but for the Agreement. Those facts are similar to the facts found in *Eide.* In *Eide,* the promise of severance benefits was not based on an ERISA plan, but merely calculated by an ERISA plan. The Eighth Circuit explained this distinction as follows: "The severance payments allegedly guaranteed Employees as inducement to transfer to Grey Fox were fixed as of Employees' final date of employment at Ceridian, which was also the final date of their participation in the Ceridian Plan." *Eide,* 329 F.3d at 607. As such, even though the severance benefit was calculated by an ERISA plan, the promise "constituted a free-standing contract providing severance payments upon some future contingency." *Id.* Factually

distinguishable in this case, and crucial to the presence of a federal question, is the fact that the alleged promise to GAP Plan benefits is not freestanding. Nowhere in the Agreement is the GAP Plan specifically mentioned.[4] Instead, it is allegedly included in the single phrase, "Pioneer Retirement Plan."

 The issue referred to in Hintze's petition calls upon the court to interpret the entire phrase, "vested rights in the Pioneer Retirement Plan." In interpreting a contract, the court must give effect to the language of the entire contract in accordance with its commonly accepted and ordinary meaning. *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 798 (Iowa 1999) (citing *Magina v. Bartlett*, 582 N.W.2d 159, 163 (Iowa 1998)); *Dickson v. Hubbell Realty, Co.*, 567 N.W.2d 427, 430 (Iowa 1997) (citing *Lange v. Lange*, 520 N.W.2d 113, 119 (Iowa 1994)). As such, this Court may not merely interpret the phrase, "Pioneer Retirement Plan," in isolation, but must also review the vesting requirements and, indeed, the entire Agreement. Proper interpretation of the Agreement requires, at least in part, inquiry into ERISA terms. "To be sure, 'basic principles of contract interpretation' are often relevant in construing an ERISA plan. But if the plan, properly construed, does not afford the benefits at issue, they may not be added to the plan by implication from an 'independent bilateral contract.'" *Stearns v. NCR Corp.*, 297 F.3d 706 (8th Cir.2002). The promise of additional benefits, as calculated under the GAP plan, altered or amended the terms of the original ERISA plan upon which the disputed phrase in the Agreement was premised.

Hintze's request for declaratory relief requires inquiry into terms of an ERISA plan. As such, Hintze's state-based claims are preempted by ERISA's civil enforcement scheme "to clarify his rights to future benefits under the terms of the plan." ERISA § 502, 29 U.S.C. § 1132(a)(1)(B). Accordingly, Hintze's Motion to Remand (Clerk's No. 9) is DENIED.

IT IS SO ORDERED.

---

**4.** The alleged promise in *Eide* was that, "Ceridian management, aware of Employees' concerns, guaranteed that if they accepted employment with Grey Fox, and Grey Fox subsequently terminated them within their first year of employment, Ceridian would pay them severance equal to that which they would have received under the Ceridian plan." *Eide*, 329 F.3d at 603.