Concurring opinion issued January 19, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00113-CV

———————————

Tyco Valves & Controls, L.P., and TV&C GP Holdings, Inc., Appellants

V.

Arsenio
Colorado, Steven Craig, Umit Davulcu, Richard Gonzales, Lanny Heinrich, Leonard
Hill, Andy Huynh, Chris Kahrig, Lay Keonakhone, Greg Lambousy, Tung Le, Chris
Luckey, Fernando Macias, Jorge Martinez, Raul Martinez, Kenneth Nash, Jimmy
Phoumlavanh, and Souk Vongsamphanh, Appellees



 



 

On Appeal from the 125th District Court

Harris County, Texas



Trial Court Case No. 2008-19895

 



 

CONCURRING OPINION

          I
concur only in the judgment of reversing and rendering a take-nothing judgment
in favor of Tyco.  The contract claims
arising from non-payment of severance “relate to” an employee benefit plan
governed by ERISA, and therefore the claims are substantively foreclosed by
that statute’s broad preemptive scope.  A
take-nothing judgment should be rendered because no other legal theory supports
the employees’ claims.

          The
Tyco International (US) Inc. Severance Plan for U.S. Employees was adopted
effective January 1, 2004.  The Gimpel
employees do not dispute that they were covered by this ERISA-governed
severance plan at the time of its adoption.[1]  Tyco’s severance plan was amended and
restated as of February 1, 2005. 
Consistent with ERISA’s requirement that every employee benefit plan
shall “provide a procedure for amending such plan, and for identifying the
persons who have authority to amend the plan,” 29 U.S.C. § 1102(b)(3), the plan
provided that it would continue until terminated pursuant to its own terms, and
also that it could be amended by the board of directors of Tyco International
Ltd. or by the board’s delegee.  The plan
language effective as of February 1, 2005 also recited that its purpose was “to
provide Eligible Employees with certain compensation and benefits as set forth
in the Plan in the event the Eligible Employee’s employment with the Company or
a Subsidiary is terminated due to an Involuntary Termination.”

Tyco entered into Retention
Incentive Agreements with the appellees in connection with planning for the
transfer and sale of the assets of the Gimpel Unit.  Under the terms of the RIAs, each employee
who signed an agreement and remained “an Active Employee of Tyco for the entire
Retention Period” would become entitled to a “retention incentive bonus.”  The RIAs only referenced the payment of
severance “in the event that the Employee is not offered Comparable Employment
with Tyco.”  In that event, the RIAs
provided for payment of “the standard Severance in accordance to the severance
schedule associated with the closure of this facility.”

The RIAs do not provide any
independent basis for determining the amount to be paid as the “standard
Severance,” and they do not identify “the severance schedule associated with
the closure of this facility.”  The
Gimpel employees’ contract claims thus depend on a combination of the RIAs and
some other document that supplies the terms of the severance benefit.  The Gimpel employees contend that the
referenced schedule is not Tyco’s severance plan, but instead it is a separate
one-page document created in the summer of 2006 by Holly Kriendler, then the
newly hired director of human resources for Tyco’s Americas region.  However, a cause of action may not be based
upon written modifications of an ERISA plan that are not and do not purport to
be a formal amendment of a plan following the procedures required by section
1102(b)(3).  See Borst v. Chevron Corp., 36 F.3d 1308, 1323 (5th Cir. 1994); Greathouse v. Glidden Co., 40 S.W.3d
560, 567 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  The appellees do not contend that Kriendler
was the board’s delegee for purposes of amending the ERISA plan (the undisputed
evidence showed this was Tyco’s senior vice president for human resources), nor
do they contend that Kriendler’s schedule was a valid amendment of the Tyco
ERISA plan.  If the West Gulf Bank
Severance schedule was not the “severance schedule associated with the closure
of this facility” on its own terms, it did not become such by operation of the
RIAs.  Accordingly, the Gimpel employees’
contract claims may not be based upon terms supplied by the so-called West Gulf
Bank Severance schedule.[2]

Instead, the only applicable
“severance schedule associated with the closure of this facility” that could
provide the basis for determining “the standard Severance” referenced by the
RIAs was Tyco’s ERISA-governed severance plan. 
The Gimpel employees’ contract claims therefore “relate to” an ERISA
plan.[3]  A state-law claim “‘relates to’ an employee
benefit plan, in the normal sense of the phrase, if it has a connection with or
reference to such a plan.”  Shaw v. Delta Air Lines, Inc., 463 U.S.
85, 96–97, 103 S. Ct.
2890, 2900 (1983).  State-law claims
“having an effect on employee benefit plans relate to such plans and are
therefore preempted by ERISA.”  Cathey v. Metro. Life Ins. Co., 805
S.W.2d 387, 390 (Tex. 1991).  The
contract claims at issue have the forbidden connection because the RIAs
reference and borrow terms from Tyco’s severance plan,[4] yet they also purport to
modify the eligibility parameters of the severance benefit provided under that
plan.  Because they received continued
employment by Dresser Rand, the Gimpel employees were not eligible for
severance under the Tyco severance plan after the sale of the Gimpel Unit.  As the Tyco ERISA severance plan explained:

An Eligible Employee will
not be eligible to receive severance benefits under any of the following
circumstances:

. . . .

                   (ix)    The
Eligible Employee’s employment with the Employer terminates as a result of a
sale of . . . assets of the Employer . . . and the Eligible Employee accepts
employment . . . with the purchaser . . . . 
The payment of Severance Benefits in the circumstances described in this
subsection (ix) would result in a windfall to the Eligible Employee, which is
not the intention of the Plan.

Tyco’s severance plan thus specifically withheld
severance benefits from employees who accepted employment from a purchaser,
describing severance payments in such a circumstance as an unintended
“windfall.”  The appellees contend that
they are nevertheless entitled to receive the “standard Severance” despite
accepting employment with Dresser Rand, relying upon the different eligibility
language of the RIAs because they were not “offered Comparable Employment with
Tyco.”  ERISA preempts any state-law
contract claim that would modify the terms of the plan in this unauthorized fashion.[5]

The foregoing analysis of how the
contract claims relate to an ERISA plan also explains why the employees’
state-law contract claims for payment of severance are not entirely independent
of an ERISA plan.  The employees’
contract claims therefore cannot be analyzed under as if they were entirely
independent of an ERISA plan, as has been the case in other circumstances in
which a standalone severance agreement has been enforced because it was
independent of the employer’s separate ERISA plan providing severance benefits.[6]

Finally, the judgment in favor of
the Gimpel employees cannot be affirmed by treating their claims as if they
were claims for benefits under an ERISA plan. 
In some circumstances a state-law contract claim preempted by ERISA can
be recharacterized as an enforcement action to obtain benefits under ERISA.  See
29 U.S.C. § 1132(a)(1)(B), (e)(1); Metro.
Life Ins. Co. v. Taylor, 481 U.S. 58, 66, 107 S. Ct. 1542, 1547
(1987).  But even if we recharacterized
the contract claims under the RIAs as claims for benefits under the Tyco
severance plan, as explained above, the employees would not be entitled to
severance payments because they were expressly excluded under the terms of the
Tyco plan.[7]

Because I conclude that the Gimpel
employees’ claims are preempted by ERISA, and they may not be recharacterized
as viable claims for benefits under ERISA, I concur only in the ultimate
judgment of reversing the trial court’s judgment and rendering judgment that
the Gimpel employees take nothing from Tyco.[8]

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists
of Justices Keyes, Sharp, and Massengale.

 

Justice Sharp,
dissenting in part.

 

Justice
Massengale, concurring only in the judgment.











[1]        ERISA
applies to any employee benefit plan established or maintained by an employer
engaged in commerce.  See 29 U.S.C. § 1003(a)(1). 
Severance plans are included within the definition of employee welfare
benefit plans.  See id. § 1002(1)
(defining “employee welfare benefit plan” and “welfare plan” to include, among
other things, “any plan, fund, or program . . . established or
maintained by an employer . . . to the extent that such plan,
fund, or program was established or is maintained for the purpose of providing
for its participants . . . benefits in the event
of . . . unemployment”); 29 C.F.R. § 2510.3-1(a)(3)
(definition of “welfare plan” includes “those plans which provide holiday and
severance benefits, and benefits which are similar”).

 





[2]        Nor is the
West Gulf Bank Severance schedule the proper basis for analyzing the question
of ERISA preemption.  The majority’s
analysis is simply misplaced to the extent it relies upon Kriendler’s one-page
schedule to define the contested severance benefit.

 





[3]        See 29 U.S.C. § 1003(a) (describing scope of
ERISA’s application to employee benefit plans). 
“ERISA preemption applies not only to state laws but to all forms of
state action dealing with the subject matters covered by this federal
statute.”  Cathey v. Metro. Life Ins. Co., 805 S.W.2d 387, 390 (Tex. 1991)
(citing 29 U.S.C. § 1144(c)(1)).

 





[4]        Notably, the Gimpel employees’ claimed
damages are the same as would be due if severance were being claimed (and the
appellees were eligible to receive benefits) under Tyco’s ERISA plan.  This factor has been relied upon by other
courts in concluding a claim was preempted by ERISA.  See,
e.g., Epps v. NCNB Tex., 7
F.3d 44, 45 (5th Cir. 1993) (“When a court must refer to an ERISA plan to
determine the plaintiff’s retirement benefits and compute the damages claimed,
the claim relates to an ERISA plan.”); Cefalu
v. B.F. Goodrich Co., 871 F.2d 1290, 1294 (5th Cir. 1989); Greathouse v. Glidden Co., 40 S.W.3d
560, 569 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  My conclusion that Gimpel employees’ claims
are preempted by ERISA is therefore bolstered by the fact that the employees’
damages were based upon their stipulation at trial about “the calculated amount
of severance” under the terms of Tyco’s ERISA plan.

 





[5]        See 29 U.S.C. § 1144(a) (providing for ERISA
conflict preemption of “any and all State laws insofar as they may now or
hereafter relate to any employee benefit plan described in [29 U.S.C.
§ 1003(a)] and not exempt under [29 U.S.C. § 1003(b)]”).

 





[6]        See, e.g., Gresham v. Lumbermen’s Mut. Casualty Co., 404 F.3d 253, 259 (4th
Cir. 2005) (relying upon “substantial differences” between contract benefit and
ERISA plan benefit and absence of indication that the contractual benefit would
be paid from funds allocated to the ERISA plan); Crews v. Gen. Am. Life Ins. Co., 274 F.3d 502, 505 (8th Cir. 2001)
(relying upon “significant differences between the company’s existing plan and
the promised benefits, as well as the lack of any evidence linking them to each
other”).  Eide v. Grey Fox Tech. Servs. Corp., 329 F.3d 600 (8th Cir. 2003),
is distinguishable because the disputed benefits in that case “were not to be
delivered pursuant to” the relevant ERISA plan; instead, they were to be paid
as a lump-sum payment.  Eide, 329 F.3d at 605–06.  In contrast, the claimed severance benefit
under the RIAs was to be paid “in accordance to the severance schedule
associated with the closure of this facility”—an ERISA plan which provided a
severance benefit paid in the form of “salary continuation” constituting “Base
Salary . . . in equal installments over the Severance Period, per
normal payroll cycles.”  The Gimpel
employees therefore cannot rely upon the absence of any administrative scheme
regulating the payment of benefits over time to distance themselves from
ERISA’s preemptive scope, as did the claimants in Eide.  See id. at 605 (citing Fort
Halifax Packing Co. v. Coyne, 481 U.S. 1, 107 S. Ct. 2211 (1987)).

 





[7]        The
problem is not that the claim would not be “cognizable under ERISA,” as Justice
Keyes characterizes my analysis, but simply that any such claim would necessarily
fail under the facts of this case.

 





[8]        Upon a
determination that a state-law claim is preempted by ERISA, Texas courts have
entered or approved judgments that render a take-nothing judgment.  See,
e.g., Gorman v. Life Ins. Co., 752 S.W.2d 710, 714 (Tex. App.—Houston [1st Dist.] 1988), aff’d in relevant part and rev’d on other
grounds, 811 S.W.2d 542 (Tex. 1991); Greathouse, 40 S.W.3d at 570–71 (holding that state-law claims for severance pay were
preempted by ERISA and affirming trial court’s entry of take-nothing
judgment).  Two justices have agreed on
this judgment of reversal and rendition of a take-nothing judgment, in satisfaction
of Tex. R. App. P. 41.1(a).